# EXHIBIT 1

E-FILED
5/11/2022 11:01 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV398321
Reviewed By: R. Cachux

Bradford K. Newman, State Bar No. 178902
  bradford.newman@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304-1044
Telephone:  +1 650 856 2400
Facsimile:  +1 650 856 9299

Christina M. Wong, State Bar No. 288171
  christina.wong@bakermckenzie.com
Brandon N. Lee, State Bar No. 335810
  brandon.lee@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone:  +1 415 576 3000
Facsimile:   +1 415 576 3099

Attorneys for Plaintiff
DFINITY USA RESEARCH, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

DFINITY USA RESEARCH, LLC, a limited liability company,

        Plaintiff,

    vs.

ERIC BRAVICK, an individual and DOES 1 through 100, inclusive,

        Defendants.

Case No.          22CV398321

**COMPLAINT FOR:**

1) **BREACH OF CONTRACT;**
2) **CONVERSION;**
3) **VIOLATION OF CALIFORNIA PENAL CODE 496(c);**
4) **VIOLATION OF CALIFORNIA CIVIL CODE § 1712; AND**
5) **UNJUST ENRICHMENT**

Plaintiff DFINITY USA Research, LLC ("Plaintiff" or "DFINITY") hereby brings this complaint against Eric Bravick ("Defendant" or "Mr. Bravick") as follows:

## NATURE OF THE CASE

1.     This action arises out Mr. Bravick's wrongful possession of and refusal to return nearly $200,000 worth of property belonging to DFINITY, his former employer.

## PARTIES

2.     Plaintiff DFINITY USA Research, LLC is a Delaware limited liability company with its principal place of business in Palo Alto, California.  Plaintiff is registered to do business in the State of California and, at all relevant times, conducted business in the State of California by operating offices at 411 Acacia Avenue, Palo Alto, California 94306 in Santa Clara County.

3.     Defendant Eric Bravick is an individual who formerly resided in San Francisco, California, but is now residing in Traverse City, Michigan.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction to hear this dispute because it has general subject matter jurisdiction over DFINITY's claims and because the parties selected California as the forum with exclusive jurisdiction over disputes arising from their contract.

5.     Venue is proper pursuant to Code of Civil Procedure Section 395 because DFINITY's headquarters and principal place of business is in Palo Alto, California, and the parties selected California as the venue for disputes arising from their contract.

6.     This is a civil action wherein the amount in controversy exceeds $25,000.

## GENERAL ALLEGATIONS

7.     On or about April 19, 2020, Defendant Eric Bravick entered into an employment contract (the "Contract") with DFINITY to serve as a Senior Director of Data Center Services.  A true and correct copy of the Contract is attached hereto as **Exhibit A**.

8.     Mr. Bravick began his employment on May 4, 2020 and, on or about August 28, 2020, he was promoted to interim Vice President of Engineering.  At that time, Mr. Bravick resided in Goleta, California, but, upon information and belief, sometime in 2020 during the

COVID outbreak, he relocated to Traverse City, Michigan, where he worked for DFINITY

remotely from his residence.

9.     During Mr. Bravick's employment with DFINITY, the company provided him with

company equipment ("Equipment") to allow him to perform his employment-related duties.  This

Equipment includes, but is not limited to, computers, servers, hard disk drives and other electronic

storage, and various computer and server hardware and accessories.  Between October 2020 and

July 2021, DFINITY provided approximately $197,883 in Equipment to Mr. Bravick.

10.     On July 23, 2021, Mr. Bravick's employment with DFINITY ended when DFINITY

terminated his employment.  Pursuant to the Contract, Mr. Bravick was required to return all

Company property at the end of his employment:

> **Company Property.** At the end of your employment period, you agree to return
> all company property including, but not limited to, keys, files, records (and
> copies thereof), and equipment (including, but not limited to, computer
> hardware, software and printers, wireless handheld devices, cellular phones,
> etc.) which is in your possession or control. You further agree to leave intact all
> electronic Company documents, including those that you developed or help
> develop during your employment.

(Exhibit A at ¶7.)

11.     Upon termination, DFINITY informed Mr. Bravick that he must return all DFINITY

property, including all company data and Equipment.  DFINITY also arranged to have a vendor

physically retrieve the Equipment from Mr. Bravick's home and requested Mr. Bravick's

availability.  Mr. Bravick ignored this request and ignored DFINITY's subsequent demands for

the return of the company's property and Equipment.

12.     Specifically, on October 4, 2021, the DFINITY Data Center Coordinator, Chris

Tarpley, contacted Mr. Bravick to arrange for the collection of the hardware from his residence.

Mr. Bravick refused to respond to this request.

13.     On November 2, 2021, DFINITY again contacted Mr. Bravick and demanded that

he provide a date for DFINITY's vendor to collect the hardware from his data center location.

Mr. Bravick did not respond to this second written request.

14.     On March 30, 2022, DFINITY reported Mr. Bravick's refusal to return the Equipment to the Palo Alto Police Department.  Upon information and belief, that same day Officer Eduardo Gonzales of the Palo Alto Police Department contacted Mr. Bravick by telephone regarding his refusal to return DFINITY's property and directed him to return the Equipment to DFINITY on or before April 29, 2022.  Mr. Bravick did not comply.

15.     On May 10, 2022, Sgt. Aaron Sunseri of the Palo Alto Police Department attempted to follow-up with Mr. Bravick by telephone.  Mr. Bravick did not answer and did not return Sgt. Sunseri's phone call.

16.     To date, Mr. Bravick has not responded to any of DFINITY's attempts to obtain the Equipment and has refused to return the company's property.

## FIRST CAUSE OF ACTION

### Breach of Contract

17.     DFINITY hereby realleges and incorporates by reference paragraphs 1 through 16 inclusive as though fully set forth herein.

18.     On April 19, 2020, Mr. Bravick executed the Contract, which is a binding contract between DFINITY and Mr. Bravick.

19.     Pursuant to the Contract, Mr. Bravick was and is obligated to, among other things, return all of DFINITY's property upon when his employment with the company ended.

20.     On July 23, 2021, DFINITY terminated Mr. Bravick's employment.

21.     Mr. Bravick has breached the Contract by refusing to return the company's property.

22.     As a result of Mr. Bravick's conduct, DFINITY has suffered damages from the loss of use of its property.

23.     WHEREFORE, DFINITY prays for judgment against Mr. Bravick as set forth below.

## SECOND CAUSE OF ACTION

### Conversion

24.     DFINITY hereby realleges and incorporates by reference paragraphs 1 through 23 inclusive as though fully set forth herein.

25.     Defendant Bravick took possession of and wrongfully retained DFINITY's property to which he was not entitled and had no rightful claim.

26.     At all times relevant hereto, DFINITY was and is the rightful owner of the Equipment, which was provided to Mr. Bravick for his use exclusively within the scope of his duties as an employee of DFINITY.

27.     Upon terminating Mr. Bravick's employment, DFINITY notified Mr. Bravick that he must return the Equipment and all DFINITY property to DFINITY.  Accordingly, Mr. Bravick knew or should have known that the Equipment belonged to DFINITY and that he did not have the right to retain or use the Equipment.

28.     Mr. Bravick has not returned any of the Equipment to DFINITY despite its multiple requests and, instead, has retained the Equipment without DFINITY's consent to its detriment.

29.     By intentionally and substantially interfering with DFINITY's right to possession of the Equipment that it rightfully owns, Mr. Bravick has wrongfully converted the property belonging to DFINITY.

30.     As a direct and proximate result of Mr. Bravick's conduct, DFINITY has been denied the use of its property and has been damaged in an amount to be proven at trial, but that exceeds $197,883.

31.     WHEREFORE, DFINITY prays for judgment against Mr. Bravick as set forth below.

### THIRD CAUSE OF ACTION

### Civil Penalties Under California Penal Code 496(c)

32.     DFINITY hereby realleges and incorporates by reference paragraphs 1 through 31 inclusive as though fully set forth herein.

33.     Mr. Bravick has wrongfully retained possession of DFINITY's Equipment, which he obtained through conduct that constitutes theft and conversion under Penal Code section 496.

34.     At all relevant times, Mr. Bravick knew that the Equipment belonged to DFINITY and that he no longer had DFINITY's consent to use or retain the property.  Mr. Bravick nonetheless refused to return the Equipment to DFINITY, despite DFINITY's demands that he do

so, and he has wrongfully retained possession of the Equipment knowing that the property was stolen.

35.     While Mr. Bravick was in the wrongful possession of DFINITY's Equipment, DFINITY demanded that the Mr. Bravick return the Equipment and/or allow DFINITY to retrieve the Equipment.  Mr. Bravick refused and still refuses to deliver, return or allow DFINITY to retrieve the Equipment, and he has not delivered or returned possession of the Equipment, or any part thereof, to DFINITY.

36.     As a result of this conduct, DFINITY has been denied use of its property and has been damaged in an amount to be proven at trial, but that exceeds $197,883.

37.     Pursuant to Penal Code section 496(c), DFINITY is entitled to recover three times the amount of its actual damages and an award of reasonable costs and attorneys' fees incurred in bringing this action.

38.     WHEREFORE, DFINITY prays for judgment against Mr. Bravick as set forth below.

### FOURTH CAUSE OF ACTION

### Restoration of Property Pursuant to Civil Code § 1712

39.     DFINITY hereby realleges and incorporates by reference paragraphs 1 through 38 inclusive as though fully set forth herein.

40.     Mr. Bravick has wrongfully retained possession of DFINITY's Equipment without DFINITY's consent or with consent by DFINITY that was rescinded upon the termination of Mr. Bravick's employment.

41.     As a direct result of Mr. Bravick's conduct, DFINITY has been denied use of its property and is entitled to restoration of that property, the return of its Equipment and compensation for the loss of use of the Equipment during the time period the property was wrongfully withheld by Mr. Bravick.

42.     Mr. Bravick's acts alleged herein were willful, wanton, malicious and oppressive and, therefore, justify awarding exemplary damages.

43.    WHEREFORE, DFINITY prays for judgment against Mr. Bravick as set forth below.

### FIFTH CAUSE OF ACTION

### Unjust Enrichment/Constructive Trust

44.    DFINITY hereby realleges and incorporate by reference paragraphs 1 through 43 inclusive as thought fully set forth herein.

45.    As a result of Mr. Bravick's conduct, set forth above, DFINITY has lost a financial benefit in the form of the value of its property, including the Equipment.

46.    DFINITY, as the lawful owner of the property, allowed Defendant Bravick to take possession of the Equipment and use it to perform his duties for the benefit of DFINITY as set forth in their employer-employee relationship.

47.    DFINITY has had at all times legal ownership to the Equipment and, upon the cessation of the employer-employee relationship, has the right to the physical possession and use of the Equipment.

48.    An employer-employee relationship no longer exists between DFINITY and Defendant Bravick and Defendant Bravick retains the Equipment without the consent of DFINITY.

49.    Defendant Bravick knows of the cessation of the employer-employee relationship and knows he no longer entitled to the possession or use of the Equipment.

50.    Defendant Bravick misappropriated the use of the Equipment for his own financial gain in an amount to be proven at trial, but in excess of $197,883.

51.    As a direct result of the foregoing conduct, Defendant Bravick has been unjustly enriched in an amount to be proven at trial, but in excess of $197,883.

52.    WHEREFORE, DFINITY prays for judgment against Mr. Bravick as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DFINITY USA Research, LLC prays for relief as follows:

1.     For possession of the personal property described above or, if the property cannot be delivered, for its value in an amount according to proof at the time of trial;

2.     For compensatory damages for loss of use of the property;

3.     For an award of enhanced damages, including an award of treble damages and reasonable costs of suit and attorneys' fees as provided under Penal Code section 496;

4.     Equitable relief in the form of a constructive trust;

5.     Any further relief as the Court deems just and proper.


Dated:  May 11, 2022                    **BAKER & McKENZIE LLP**


By: _Bradford K. Newman_ _____
     Bradford K. Newman
     Christina M. Wong
     Brandon N. Lee

     Attorneys for Plaintiff
     DFINITY USA RESEARCH, LLC


## **JURY TRIAL DEMANDED**

Plaintiff requests trial by jury on all issues so triable.


Dated:  May 11, 2022                    **BAKER & McKENZIE LLP**


By: _Bradford K. Newman_ _____
     Bradford K. Newman
     Christina M. Wong
     Brandon N. Lee

     Attorneys for Plaintiff
     DFINITY USA RESEARCH, LLC

# EXHIBIT A

DocuSign Envelope ID: DA001DB3-9554-4B2B-A18A-3BA81BB48B43

**DFINITY USA RESEARCH, LLC**

411 Acacia Avenue, Palo Alto, CA 94306

April 17, 2020

Eric Bravick
1523 Bee Ct.
Traverse City, MI 49696

Dear Eric:

DFINITY USA Research, LLC (the "Company") is pleased to offer you employment on the following terms:

1. **Position**.  Your initial title will be Senior Director, Data Center Services reporting to the President. This is a full-time exempt position, effective May 4, 2020.  Your title and reporting structure will be subject to change from time to time at the discretion of the Company.  While you render services to the Company, you will not engage in any other employment, consulting or other business activity (whether full-time or part-time) that would create a conflict of interest with the Company.  By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

2. **Cash Compensation**.  The Company will pay you a starting salary at the rate of $275,000 per year, payable in accordance with the Company's standard payroll schedule.  This salary will be subject to adjustment pursuant to the Company's employee compensation policies in effect from time to time.  The Company may also determine to award a discretionary bonus in respect of your services, on an annual or periodic basis, in the sole discretion of the Company.

3. **Equity Compensation**.  Subject to the approval of the Company's Foundation Council, you will receive 200,000 Restricted Token Units ("RTUs").  The RTUs will vest over a 4-year term under which $1/4^{th}$ of the RTUs will vest after 12 months of employment and the remainder of the RTUs will vest in 36 equal monthly installments thereafter, provided that you remain in continuous service with the Company during this time.  If granted, any such RTU shall be subject to the provisions of the 2019 Token Plan and applicable token agreement.

4. **Employee Benefits**.  As a regular employee of the Company, you will be eligible to participate in a number of Company-sponsored benefits.  In addition, you will be entitled to paid time off in accordance with the Company's vacation policy, as in effect from time to time.

5. **Proprietary Information and Inventions and Non-Solicitation Agreements**.  Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's standard Proprietary Information and Inventions Agreement, a copy of which is attached hereto as **Exhibit A,** and a standard Non-Solicitation Agreement, a copy of which is attached hereto as **Exhibit B**.

6. **Employment Relationship**.  Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause.  Any contrary representations that may have been made to you are superseded by this letter agreement.  This is the full and complete agreement between you and the Company on this term.  Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your

employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company (other than you).

7.    **Company Property.** At the end of your employment period, you agree to return all Company property including, but not limited to, keys, files, records (and copies thereof), and equipment (including, but not limited to, computer hardware, software and printers, wireless handheld devices, cellular phones, etc.) which is in your possession or control.  You further agree to leave intact all electronic Company documents, including those that you developed or help develop during your employment.

8.    **Tax Matters**.

(a)    **Withholding**.  All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law.

(b)    **Tax Advice**.  You are encouraged to obtain your own tax advice regarding your compensation from the Company.  You agree that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board of Directors related to tax liabilities arising from your compensation.

1.    **Interpretation, Amendment and Enforcement**.  This letter agreement and Exhibit A supersede and replace any prior agreements, representations or understandings (whether written, oral, implied or otherwise) between you and the Company and constitute the complete agreement between you and the Company regarding the subject matter set forth herein.  This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company.  The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by California law, excluding laws relating to conflicts or choice of law.  You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in California in connection with any Dispute or any claim related to any Dispute.

\* \* \* \* \*

We hope that you will accept our offer to join the Company.  You may indicate your agreement with these terms and accept this offer by signing and dating both the enclosed duplicate original of this letter agreement and the enclosed Confidential Information and Inventions Assignment Agreement and returning them to me.  This offer, if not accepted, will expire two weeks from the date of this letter agreement.  As required by law, your employment with the Company is contingent upon your providing legal proof of your identity and authorization to work in the United States.  Your employment is also contingent upon your starting work with the Company on or before May 4, 2020.

Very truly yours,

DFINITY USA RESEARCH, LLC

Signature: _____

Name: Diana Sutter

Title: VP of People

I have read and accept this employment offer:

_____
Signature of Employee

Dated: _____4/19/2020_____

**Attachment(s)**

Exhibit A: Proprietary Information and Inventions Agreement
Exhibit B: Non-Solicitation Agreement

- 3 -

**EXHIBIT A**

**DFINITY USA RESEARCH, LLC**

**INVENTION AND NON-DISCLOSURE AGREEMENT**

This Invention and Non-Disclosure Agreement (this "**Agreement**") made on April 17, 2020, is by and between DFINITY USA Research, LLC (the "**Company**"), and Eric Bravick (the "**Employee**").

In consideration of the employment of the Employee by the Company, the Employee and the Company agree as follows:

      1.    <u>Condition of Employment</u>.  The Employee acknowledges that Employee's employment with the Company is contingent upon Employee's agreement to sign and adhere to the provisions of this Agreement. The Employee further acknowledges that the nature of the Company's business is such that protection of its proprietary and confidential information is critical to the survival and success of the Company's business.

      2.    <u>Proprietary and Confidential Information</u>.

      (a)    The Employee agrees that all information and know-how, whether or not in writing, of a private, secret or confidential nature concerning the Company's business or financial affairs (collectively, "**Proprietary Information**") is and shall be the exclusive property of the Company.  By way of illustration, but not limitation, Proprietary Information may include discoveries, ideas, inventions, products, product improvements, product enhancements, processes, methods, techniques, formulas, compositions, compounds, negotiation strategies and positions, projects, developments, plans (including business and marketing plans), research data, clinical data, financial data (including sales costs, profits, pricing methods), personnel data, computer programs (including software used pursuant to a license agreement), customer, prospect and supplier lists, and contacts at or knowledge of customers or prospective customers of the Company.  The Employee shall not disclose and shall hereby not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of Employee's duties as an employee of the Company) without written approval by an officer of the Company, either during or after Employee's employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee.  While employed by the Company, the Employee shall use and shall hereby use the Employee's best efforts to prevent unauthorized publication or disclosure of any of the Company's Proprietary Information.

      (b)    The Employee agrees that all files, documents, letters, memoranda, reports, records, data, sketches, drawings, models, laboratory notebooks, program listings, computer equipment or devices, computer programs or other written, photographic, or other tangible or intangible material containing Proprietary Information, whether created by the Employee or others, which come into Employee's custody or possession, shall be and are the exclusive property of the Company to be used by the Employee only in the performance of Employee's duties for the Company and shall not be copied or removed from the Company premises except in the pursuit of the business of the Company.  All such materials or copies thereof and all tangible property of the Company in the custody or possession of the Employee shall be delivered to the Company, upon the earlier of (i) a request by the Company or (ii) termination of Employee's employment for any reason.  After such delivery, the Employee shall not retain any such materials or copies thereof or any such tangible property.

- 4 -

(c)     The Employee agrees that Employee's obligation not to disclose or to use information and materials of the types set forth in paragraphs 2(a) and 2(b) above, and Employee's obligation to return materials and tangible property, set forth in paragraph 2(b) above, also extends to such types of information, materials and tangible property of customers of the Company or suppliers to the Company or other third parties who may have disclosed or entrusted the same to the Company or to the Employee in the course of the Company's business.

3.     <u>Developments</u>.

(a)     The Employee has attached hereto, as <u>Exhibit A</u>, a list describing all discoveries, ideas, inventions, improvements, enhancements, processes, methods, techniques, developments, software, and works of authorship, whether patentable or not, which were created, made, conceived or reduced to practice by the Employee prior to the Employee's employment by the Company and which are owned by Employee, which relate directly or indirectly to the current or anticipated future business of the Company, and which are not assigned to the Company hereunder (collectively, "**Prior Developments**"); or, if no such list is attached, Employee represents that there are no Prior Developments.  If applicable, the Employee agrees to return the competed list within five (5) business days from the day the Employee is presented with this Agreement. Employee agrees not to incorporate any Prior Developments into any Company product, material, process or service without prior written consent of an officer of the Company.  If Employee does incorporate any Prior Development into any Company product, material, process or service, Employee hereby grants to the Company a non-exclusive, worldwide, perpetual, transferable, irrevocable, royalty-free, fully-paid right and license to make, have made, use, offer for sale, sell, import, reproduce, modify, prepare derivative works, display, perform, transmit, distribute and otherwise exploit such Prior Development and to practice any method related thereto.

(b)     The Employee shall make and shall hereby make full and prompt disclosure to the Company of all discoveries, ideas, inventions, improvements, enhancements, processes, methods, techniques, developments, software, and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by Employee or under Employee's direction or jointly with others during Employee's employment by the Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "**Developments**").  The Employee acknowledges that each original work of authorship which is made by the Employee (solely or jointly with others) within the scope of and during the period of Employee's employment with the Company and which is protectable by copyright is a "work made for hire," as that term is defined in the United States Copyright Act. The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all Employee's right, title and interest in and to all Developments (other than Prior Developments listed on <u>Exhibit A</u>, if any) and all related patents, patent applications, copyrights and copyright applications to the maximum extent permitted by Section 2870 of the California Labor Code.  The Employee understands that the provisions of this Agreement requiring assignment of Developments to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>).  The Employee also hereby waives all claims to moral rights in any Developments.

(c)     The Employee agrees to cooperate fully with the Company, both during and after Employee's employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments.  The Employee shall sign all papers, including, without limitation, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights, and powers of attorney, which the Company may deem necessary or desirable in order to protect its rights and interests in any Development.  The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as Employee's agent and attorney-in-fact to execute any such papers on Employee's behalf, and to take any and all actions as the Company may deem

necessary or desirable in order to protect its rights and interests in any Development, under the conditions described in this sentence.

4.      Obligations to Third Parties.  The Employee represents that, except as the Employee has disclosed in writing to the Company on Exhibit A attached hereto, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of Employee's employment with the Company, to refrain from competing, directly or indirectly, with the business of such previous employer or any other party or to refrain from soliciting employees, customers or suppliers of such previous employer or other party.  The Employee further represents that Employee's performance of all the terms of this Agreement and the performance of Employee's duties as an employee of the Company do not and will not conflict with or breach any agreement with any prior employer or other party (including, without limitation, any nondisclosure or non-competition agreement), and that the Employee shall not and shall hereby not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

5.      Scope of Disclosure Restrictions.  Nothing in this Agreement or elsewhere prohibits the Employee from reporting possible violations of state or federal law or regulation to any government agency, regulator, or legal authority, or making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation.  The Employee is not required to notify the Company that the Employee has made any such reports or disclosures; provided, however, that nothing herein authorizes the disclosure of information the Employee obtained through a communication that was subject to the attorney-client privilege, unless disclosure of the information would otherwise be permitted by an applicable law or rule.  Further, pursuant to the Defend Trade Secrets Act: "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret [as defined in the Economic Espionage Act] that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

6.      United States Government Obligations.  The Employee acknowledges that the Company from time to time may have agreements with other persons or with the United States Government, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such work.  The Employee agrees to be bound by all such obligations and restrictions which are made known to the Employee and to take all action necessary to discharge the obligations of the Company under such agreements.

7.      Miscellaneous.

(a)      Equitable Remedies.  The Employee acknowledges that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose.  The Employee agrees that any breach or threatened breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure.  Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach without posting a bond and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

     (b)    <u>Disclosure of this Agreement</u>.  The Employee hereby authorizes the Company to notify others, including but not limited to customers of the Company and any of the Employee's future employers or prospective business associates, of the terms and existence of this Agreement and the Employee's continuing obligations to the Company hereunder.

     (c)    <u>Not Employment Contract</u>.  The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue Employee's employment for any period of time and does not change the at-will nature of Employee's employment.

     (d)    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal and shall not be assigned by Employee.  The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

     (e)    <u>Severability</u>.  In case any provision of this Agreement shall be invalid, illegal or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

     (f)    <u>Waivers</u>.  No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right.  A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

     (g)    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California (without reference to the conflicts of laws provisions thereof).  Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the State of California (or, if appropriate, a federal court located within the Northern District of California), and the Company and the Employee each consents to the jurisdiction of such a court.

     (h)    <u>Entire Agreement; Amendment</u>.  This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement.  This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company.  The Employee agrees that any change or changes in Employee's duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

     (i)    <u>Captions</u>.  The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have executed the Invention and Non-Disclosure Agreement as of the date and year first above written.

**COMPANY:**

**DFINITY USA RESEARCH, LLC**

By: _____
       *Diana Sutter*
       1D2C567C3CDF48D...

Name: _____
       Diana Sutter


**EMPLOYEE:**

By: _____
       *Eric Bravick*
       6064328F88A2401...

Name: _____
       Eric Bravick

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP EXCLUDED UNDER SECTION 3(A) OR CONFLICTING AGREEMENTS DISCLOSED UNDER SECTION 4**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

Except as indicated above on this <u>Exhibit A</u>, I have no Prior Developments to disclose pursuant to Section 3(a) of this Agreement and no agreements to disclose pursuant to Section 4 of this Agreement.

**EMPLOYEE:**

By: _____
DocuSigned by:
*Eric Bravick*
6064328F88A2401...

Name: Eric Bravick
_____

**EXHIBIT B**

**CALIFORNIA LABOR CODE SECTION 2870**

**INVENTION ON OWN TIME – EXEMPTION FROM AGREEMENT**

THIS IS TO NOTIFY EMPLOYEE, in accordance with Section 2872 of the California Labor Code, that:

**a)** Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

   **(1)** Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer, or

   **(2)** Result from any work performed by the employee for his or her employer.

**b)** To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

The foregoing limited exclusion does not apply to any patent or invention covered by a contract between the Company and the United States or any of its agencies requiring full title to such patent or invention to be in the United States.

**EXHIBIT B**

**DFINITY USA RESEARCH, LLC**

**NON-SOLICITATION AGREEMENT**

This Non-Solicitation Agreement (this "**Agreement**") made on April 17, 2020 is by and between DFINITY USA Research, LLC, a Delaware limited liability company (the "**Company**"), and Eric Bravick (the "**Employee**").  For good consideration and in consideration of the employment or continued employment of the Employee by the Company, the Employee and the Company agree as follows:

1.     <u>Non-Solicitation</u>.  While the Employee is employed by the Company and for a period of twenty-four (24) months after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly, either alone or in association with others (i) solicit, induce or attempt to induce, any employee or independent contractor of the Company to terminate his or her employment or other engagement with the Company, or (ii) recruit or attempt to recruit any person who is employed or otherwise engaged by the Company. If the Employee violates the provisions of this Section 1, the Employee shall continue to be bound by the restrictions set forth in this Section 1 until a period of twenty-four months has expired without any violation of such provisions.

2.     <u>Miscellaneous</u>.

(a)     <u>Equitable Remedies</u>.  The Employee acknowledges that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose.  The Employee agrees that any breach or threatened breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure.  Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach without posting a bond and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(b)     <u>Obligations to Third Parties</u>.  The Employee represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from competing, directly or indirectly, with the business of such previous employer or any other party, or to refrain from soliciting employees, customers or suppliers of such previous employer or other party.  The Employee further represents that his/her performance of all the terms of this Agreement and the performance of his/her duties as an employee of the Company does not and will not conflict with or breach any agreement with any prior employer or other party (including, without limitation, any non-competition agreement).

(c)     <u>Disclosure of this Agreement</u>.  For a period of twenty-four months after the termination or cessation of the Employee's employment for any reason, the Employee agrees to notify any potential, prospective employer or prospective business associate, of the terms and existence of this Agreement and the Employee's continuing obligations to the Company hereunder.

(d)     <u>Not Employment Contract</u>.  The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue his/her employment for any period of time and does not change the at-will nature of his/her employment.

ActiveUS 165406593v.1

(e)    <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal and shall not be assigned by him or her. The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

(f)    <u>Interpretation</u>. If any restriction set forth in Section 1 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(g)    <u>Severability</u>. In case any provision of this Agreement shall be invalid, illegal or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(h)    <u>Waivers</u>. No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

(i)    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the State of California (or, if appropriate, a federal court located within the Northern District of California), and the Company and the Employee each consents to the jurisdiction of such a court.

(j)    <u>Entire Agreement; Amendment</u>. This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(k)    <u>Captions</u>. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

[Remainder of Page Intentionally Left Blank]

ActiveUS 165406593v.1

IN WITNESS WHEREOF, the parties hereto have executed the Non-Solicitation Agreement as of the date and year first above written.

**COMPANY:**

**DFINITY USA RESEARCH, LLC**

By: _____*Diana Sutter*_____
1D2C567C3CDF48D...

Name: _____Diana Sutter_____

**EMPLOYEE:**

By: _____*Eric Bravick*_____
6084328F88A2401...

Name: _____Eric Bravick_____