

**Gabriel M. Ramsey**
gramsey@crowell.com
(415) 365-7207  direct

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
+1.415.986.2800  main
+1.415.986.2827  fax

July 22, 2022

Hon. Edward J. Davila
U.S.D.C. Northern District of California
280 South 1st Street
San Jose, CA 95113

Re:     Case No. 5:22-cv-03732-NC, DFINITY USA RESEARCH, LLC v. ERIC BRAVICK
        New Controlling Legal Authority from California Supreme Court

Dear Judge Davila:

We are writing to inform the Court that the California Supreme Court has issued a decision that affects the legal arguments made in defendant Eric Bravick's Notice of Motion and Motion to Dismiss filed on July 1, 2022.

Defendant's Memorandum of Points and Authorities cites *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1134-36 (2020) on page 6. When Defendant's brief was filed, the decision was under review by the California Supreme Court.  On July 21, 2022, the California Supreme Court released its opinion, attached to this letter as Exhibit A, which changes California state law regarding California Penal Code 496(c).

As a result of the California Supreme Court's July 21, 2022 decision, Defendant withdraws his arguments found on page 5, lines 10-23; page 6, lines 5-28; and page 7, lines 20-22. Defendant believes that the decision does not affect his arguments regarding the knowledge requirement or extraterritorial application of Cal. Penal Code 496(c), and does not withdraw those arguments. Defendant has also attached a redline of the brief to this letter as Exhibit B.

Sincerely,

*/s/ Gabriel M. Ramsey*
Gabriel M. Ramsey

cc:     Hon. Nathanael Cousins

# EXHIBIT A

# IN THE SUPREME COURT OF CALIFORNIA

SIRY INVESTMENT, L.P.,
Plaintiff and Appellant,

v.

SAEED FARKHONDEHPOUR et al.,
Defendants and Appellants.

S262081

Second Appellate District, Division Two
B277750, B279009 and B285904

Los Angeles County Superior Court
BC372362

---

July 21, 2022

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Guerrero concurred.

Justice Groban filed a concurring opinion, in which Justice Kruger concurred.

---

# SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
## S262081

## Opinion of the Court by Cantil-Sakauye, C. J.

We granted review to address apparent conflicts in the Courts of Appeal concerning (1) whether a party in default has standing to file a motion for a "new trial" asserting legal error relating to calculation of damages and (2) whether a trial court may award treble damages and attorney's fees under Penal Code section 496, subdivision (c)[1] in a case involving, not trafficking of stolen goods, but instead, fraudulent diversion of a partnership's cash distributions.  The Court of Appeal below answered "yes," and "no," respectively.

We answer yes to both questions — and hence affirm the appellate court's judgment in the first respect, and reverse it in the second.  As we will explain, the standing conclusion is supported by the statutory scheme as construed by well-reasoned prior appellate decisions and considerations of judicial economy.  Likewise, the second conclusion — that treble damages and attorney's fees are available under section 496(c) when, as here, property "has been obtained in any manner constituting theft" — is compelled by the statute's unambiguous words and our obligation to honor them.  If, as the Court of Appeal below determined, such remedies are problematic as a

---

[1] Hereinafter section 496(c).  Future undesignated statutory citations are to the Penal Code unless otherwise indicated.

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

matter of policy, the Legislature can be expected to amend the statute accordingly.

## I. FACTS AND PROCEDURE

We set forth the facts and procedural background, as recited in the Court of Appeal's decision below (*Siry v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1109–1113 (*Siry*)), with minor adjustments.

In 1998, Moe Siry, Saeed Farkhondehpour (Farkhondehpour), and Morad Neman (Neman) formed the "241 E. 5th Street Partnership" to renovate and lease space in a mixed-use building in downtown Los Angeles.  The partnership agreement named one general partner — 416 South Wall Street, Inc. (of which Farkhondehpour was president) — and four limited partners — Siry Investment, L.P. (hereinafter plaintiff), the 1993 Farkhondehpour Family Trust (of which Farkhondehpour was trustee), the Neman Family Irrevocable Trust (of which Neman was trustee), and the Yedidia Investment Defined Benefit Plan Trust (of which Neman was also trustee).  The agreement divided the partnership's cash distributions as follows:  Plaintiff was to receive 39.60 percent; the Farkhondehpour Family Trust, 29.70 percent; the Neman Family Irrevocable Trust, 19.80 percent; and the Yedidia Defined Benefit Plan Trust, 9.90 percent.  A separate entity, Investment Consultants, LLC (hereinafter Investment Consultants), was responsible for acting as property manager, making the required cash distributions, and overseeing the renovations.

In 2003, Farkhondehpour, 416 South Wall Street, and Neman (hereinafter defendants) created an entity named DTLA and required the building's tenants to pay their rent to DTLA.

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

Defendants then began to improperly divert rental income away from the limited partnership and into DTLA. Farkhondehpour and Neman also commenced charging personal and other non-partnership expenses to the partnership. The net effect of these actions was to direct Investment Consultants to underpay plaintiff its cash distributions. Farkhondehpour and Neman ensured that plaintiff remained unaware of the underpayments by misrepresenting to plaintiff the building's rental income and the partnership's expenses, effectively lying to plaintiff about what its cash distributions should have been.

## A. Plaintiff's Lawsuit, First Trial, and Reversal

In June 2007, plaintiff sued defendants and the entities over which they were trustees for underpaying plaintiff and improperly diverting the partnership's rental income to their own coffers.[2]

The matter proceeded to a jury trial in October 2009. At that time, plaintiff's operative second amended complaint sought (1) dissolution and winding up of the limited partnership; (2) an accounting; (3) damages for breach of the agreement; and (4) damages for breach of fiduciary duty. The jury found for plaintiff, awarding actual damages of $242,975 and punitive

---

[2]     As the Court of Appeal below mentioned, "this was the second lawsuit arising out of the partnership. In 2003, Farkhondehpour and Neman sued [plaintiff] for breach of a different agreement" — and plaintiff "cross-claimed for underpayment of cash distributions from the partnership. After an arbitrator rejected Farkhondehpour's and Neman's claims, [plaintiff] settled its remaining cross-claims in 2007, with the requirement that Farkhondehpour and Neman provide an accounting (and, if warranted, a redistribution) of the partnership's profits." (*Siry*, *supra*, 45 Cal.App.5th at p. 1110, fn. 2.)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

damages of $1.1 million against Farkhondehpour and $2 million against Neman.  The trial court denied a subsequent motion for a new trial, but reduced the punitive damages awards to $728,925 against each Farkhondehpour and Neman.

In late 2012, the Court of Appeal reversed the judgment because the special verdict form submitted to the jury did not require the jury to specify whether Farkhondehpour and Neman were liable to plaintiff individually or as trustees of the various trusts. (*Siry Investment, L.P. v. Farkhondehpour* (Dec. 12, 2012, B223100, B234655) [nonpub. opn.].)  The court explained that this defect rendered the verdict "hopelessly ambiguous" because "who is liable [was] key" — and hence remanded the matter for retrial. (*Ibid.*)

## B. Issuance of Terminating Sanctions on Remand

On remand, plaintiff propounded two rounds of discovery on defendants — in late 2013, and again in early 2014. Defendants failed to adequately respond to the discovery or to the trial court's subsequent orders directing them to do so without objection.

In 2015, plaintiff served defendants with notices that it was seeking $4 million in punitive damages against each of them.  Plaintiff subsequently moved for terminating sanctions based on defendants' steadfast refusal to respond to plaintiff's discovery requests or to obey the trial court's multiple orders compelling responses.  At that time, plaintiff's operative fifth amended complaint sought (1) compensatory damages for breach of the partnership agreement, breach of an oral contract, breach of fiduciary duty, aiding and abetting breach of fiduciary

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

duty, and fraud;[3] (2) punitive damages; (3) treble damages pursuant to section 496(c); and (4) attorney's fees under that same statute.   Plaintiff's demands for treble damages and attorney's fees were new — those remedies had not been sought in connection with the first trial.

Defendants opposed the motion with extensive briefing and nearly 1,700 pages of exhibits.  The court held two hearings and eventually issued a written order striking defendants' answers and entering their default.

## C. Default Prove-up and Entry of Judgment

Plaintiff filed more than 2,000 pages of documents in anticipation of the hearing at which it would prove its damages. In mid-2016, the trial court issued an order finding that plaintiff had "met its evidentiary burden as to all claims."  The court entered default judgment against defendants, awarding plaintiff (1) actual compensatory damages, with interest, of $956,487; (2) treble damages of $2,869,461 pursuant to section 496(c); (3) punitive damages of $4 million (plus $1 against only 416 South Wall Street); (4) attorney's fees totaling $4,010,008.97; and (5) costs of $187,109.13 — for a total of $12,023,067.10.

## D. Motion for a New Trial and Ensuing Reduction of Damages

Defendants filed a motion for "new trial" (or, more precisely, in this setting, a new judgment hearing) premised on several grounds.  Among other things, and as pertinent now, defendants argued that the trial court had awarded excessive damages and erred by (1) affording treble damages under

---

[3]   Plaintiff later dismissed its breach of contract and aiding and abetting claims.

section 496(c); (2) miscalculating the treble damages award;
(3) granting a constitutionally excessive amount of punitive
damages; (4) allowing plaintiff to collect both treble damages
*and* punitive damages, rather than requiring plaintiff to elect
between them; and (5) permitting attorney's fees under section
496(c).

The trial court partially denied and partially granted
defendants' motion. As a threshold matter, the court ruled that
defendants had standing to move for a new trial despite the
entry of default against them. On the merits, the court ruled
that it had properly awarded treble damages and attorney's fees
under section 496(c), but had miscalculated the treble damages
award. Similarly, the trial court concluded that its punitive
damages award was constitutionally excessive, and that
plaintiff must choose to collect either treble damages or punitive
damages.

Plaintiff filed a notice electing to collect treble damages,
rather than punitive damages. Thereafter, the trial court
entered an amended judgment against defendants, jointly and
severally, awarding plaintiff (1) actual compensatory damages,
with interest, of $956,487; (2) another $1,912,974, reflecting
trebling pursuant to section 496(c); (3) attorney's fees totaling
$4,010,008.97; and (4) costs of $187,109.13 — for a total of
$7,066,579.10.

## E. The Court of Appeal's Decision

Defendants appealed from the original default judgment
and from the amended judgment, challenging the trial court's
award of treble damages and attorney's fees under 496(c).
Plaintiff cross-appealed from the amended judgment,
challenging defendants' standing, as parties in default, to file a

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

motion for a new trial asserting legal error relating to calculation of damages. As noted, the appellate court below ruled for defendants — finding they had standing, and that section 496(c) is inapplicable in this setting. We granted review to address apparently conflicting Court of Appeal decisions concerning those two issues.[4]

## II. DISCUSSION

### A. Standing to Move for a New Trial To Contest the Amount of the Default Judgment

Code of Civil Procedure section 657 provides that a "party aggrieved" may ask the trial court to vacate a verdict (or "other decision") and grant "a new or further trial" for any of seven listed "causes . . . materially affecting" the moving party's "substantial rights." As pertinent here, subdivision 5 identifies "[e]xcessive . . . damages," subdivision 6 addresses a "verdict or other decision [that is] against law," and subdivision 7 specifies "[e]rror in law, occurring at the trial and excepted to by the party making the application." The Court of Appeal framed the issue: "[M]ay a 'party' *in default* move for a *new* trial when, by virtue of the default, there was no trial in the first place?" (*Siry*, *supra*, 45 Cal.App.5th at p. 1129.)

As the appellate court below recognized, a party who is in default is barred from further participation in the proceedings,

---

[4]   Thereafter the "Neman parties" (Morad Neman, individually and as former trustee of the Neman Family Irrevocable Trust, and the Yedidia Investments Defined Benefit Plan) filed in this court a notice of nonappearance. The notice recited that weeks before we granted review of the Court of Appeal decision below, the Neman parties settled with plaintiff and would file no further briefs in this matter, nor appear at oral argument in this court.

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

and hence from " 'except[ing] to' " any error during the prove-up hearing itself. (*Siry*, *supra*, 45 Cal.App.5th at p. 1129, citing *Christerson v. French* (1919) 180 Cal. 523, 525; *Devlin v. Kearny Mesa AMC/Jeep/Renault* (1984) 155 Cal.App.3d 381, 385 (*Devlin*); and *Forbes v. Cameron Petroleums, Inc.* (1978) 83 Cal.App.3d 257, 262.)   Yet, as the Court of Appeal also observed, a "plaintiff still bears the burden of *proving* its entitlement to damages to the court." (*Siry*, *supra*, 45 Cal.App.5th at p. 1129, italics added, citing *Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 302, and Code Civ. Proc., § 585, subd. (b).)   Correspondingly, the appellate court noted, in this setting the trial court "acts as a 'gatekeeper,' not a rubber stamp," and remains obligated to ensure that a plaintiff has established entitlement to damages under "(1) the relevant statute, contract, or legal doctrine, and (2) the well-[pleaded] allegations in its operative complaint." (*Siry*, *supra*, 45 Cal.App.5th at p. 1132.)

The appellate court below also explained that entry of default "does not entirely render a defaulting defendant persona non grata." (*Siry*, *supra*, 45 Cal.App.5th at p. 1129.)   Even a defaulting defendant who has no right to participate at a prove-up hearing nevertheless may *appeal* the resulting default judgment on grounds that a damages award "(1) 'is so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice or corruption' (*Uva v. Evans* (1978) 83 Cal.App.3d 356, 363), (2) 'is so out of proportion to the evidence that it shocks the conscience of the appellate court' ([*id*., at p. 364]), or (3) is 'contrary to law' (see *Lasalle v. Vogel* (2019) 36 Cal.App.5th 127, 139 [defaulting party may appeal refusal to set aside verdict on these grounds]." (*Siry*, *supra*, 45 Cal.App.5th at pp. 1129–1130.)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

Accordingly, the appellate court reasoned, because it is established that "a defaulting defendant can *appeal* a default judgment" on the three grounds listed above, there is " 'no reason to preclude [defendants] from seeking a new trial (or, more precisely, a new judgment hearing)' " on those same grounds. (*Siry*, *supra*, 45 Cal.App.5th at p. 1130, italics added, quoting *Don v. Cruz* (1982) 131 Cal.App.3d 695, 704 (*Don*) [citing and applying Code Civ. Proc., § 657 subd. 6]; see also *Misic v. Segars* (1995) 37 Cal.App.4th 1149, 1154 (*Misic*).) The *Siry* court observed:  "Allowing a defaulting party to bring excessive damages based on errors in law to the trial court's attention in a new trial motion puts those potential errors before the court with greater familiarity with the case, does so in a manner likely to yield a faster result, and may thereby altogether obviate the need for an appeal." (*Siry*, *supra*, 45 Cal.App.5th at p. 1130; see also *Don*, *supra*, 131 Cal.App.3d at p. 705.)

Although some of our older cases articulated a broad rule that a defaulting defendant is out of court and may not move for a new trial (see *Howard Greer Custom Originals v. Capritti* (1950) 35 Cal.2d 886, 888–889, and cases cited), in *Carney v. Simons* (1957) 49 Cal.2d 84, we declined to employ such preclusive language.[5]  Thereafter, in *Shroeder v. Auto Driveway*

---

[5]    The Court of Appeal below observed that in *Carney v. Simons*, *supra*, 49 Cal.2d 84, we departed "from *Howard Greer*'s sweeping language when it held that a new trial motion is appropriate in many different situations 'except possibly in the case of default judgments . . . where there may be the question of the right of the moving party to make any objection to the judgment.' " (*Siry*, *supra*, 45 Cal.App.5th at p. 1130, quoting *Carney*, *supra*, 49 Cal.2d at p. 90.)  The Court of Appeal below reasoned that because defaulting defendants may appeal the

*Co.* (1974) 11 Cal.3d 908, we foreshadowed the determination reached by the appellate court below.  We held that a party may not "challenge [a] damage award on appeal[] without [first making] a motion for a new trial" — and that to conclude otherwise would "unnecessarily burden the appellate courts with issues which can and should be resolved at the trial level." (*Id*., at p. 919.)

Efficiency and prudent allocation of judicial resources counsel us to apply the same reasoning in the circumstances of this case, and to agree with the Court of Appeal below that defendants' challenges to the damages awarded in the original and amended default judgments are properly viewed as "[e]rror[s] in law" under Code of Civil Procedure section 657, subdivision 7.  As noted, that provision addresses "[e]rror in law, occurring at the trial and excepted to by the party making the application."  In context, it is reasonable to view (as apparently the Court of Appeal did) the prove-up hearing as constituting the "trial" for purposes of this statutory provision.  Although, as the appellate court below implicitly acknowledged, defendants did not (and, because they were in default, could not) voice, at that prove-up hearing, any "except[ion]" (*ibid*.) to the trial court's alleged legal errors regarding damages and attorney's fees, for reasons of judicial economy defendants may be seen as having the right to move for a new trial under that subdivision. Quite simply, it would waste resources to require an appellate court to resolve an issue that can and should be resolved at the

---

damages award of a default judgment in the three circumstances delineated above, they have the 'right . . . to make an[] objection to the judgment' and thus, under *Carney*, may also move for a new trial in those same circumstances." (*Siry*, *supra*, 45 Cal.App.5th at p. 1130.)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

trial court level.  (*Don*, *supra*, 131 Cal.App.3d at p. 705 ["It
would be anomalous to hold that the trial court has the power to
grant a new trial where a fairly contested trial has resulted in
an award which is excessive as a matter of law, but may not do
so where the excessive award results from an ex parte
proceeding"]; cf. *In re Fosselman* (1983) 33 Cal.3d 572, 582
[although Pen. Code, § 1181 (the criminal procedure counterpart
to Code Civ. Proc., § 657) does not list asserted "ineffective
assistance of [trial] counsel" as a ground for a new trial motion,
"in appropriate circumstances justice will be expedited" by
"presenting the issue of counsel's effectiveness to the trial court
as the basis of a motion for new trial," and the trial court had
authority to entertain a motion for new trial on such grounds].)

Plaintiff's other challenges to this conclusion were
properly addressed and rejected in the appellate court's opinion
below.  (*Siry*, *supra*, 45 Cal.App.5th at pp. 1130–1131.)   For
present purposes, we find it useful to briefly address plaintiff's
observation that some Court of Appeal decisions, most notably
*Brooks v. Nelson* (1928) 95 Cal.App. 144, 147–148 and *Devlin*,
*supra*, 155 Cal.App.3d at pages 385–386, have asserted that a
defaulting defendant may not file a motion for new trial under
*any* circumstances.     Yet both *Brooks* and *Devlin* are
distinguishable:  The former never squarely addressed the new
trial motion issue; and the latter's discussion amounts to
problematic dictum.  (See *Misic*, *supra*, 37 Cal.App.4th at
p. 1154 [*Devlin*'s "dictum . . . 'is unsupported by any recent
authority, and is believed to be incorrect' "].)  Moreover, and in
any event, as the Court of Appeal below explained, those and
other such decisions are distinguishable for another,
fundamental reason:  They "did not consider the rationale . . .
that there is no reason to deprive the trial court of the power to

11

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

consider challenges to the excessiveness or legal propriety of damages when those very same issues can undoubtedly be raised on appeal." (*Siry*, *supra*, 45 Cal.App.5th at p. 1131.)

Ultimately, the Court of Appeal, applying Code of Civil Procedure section 657, subdivision 7, determined that defendants' challenges to the damages awarded in the original and amended default judgment raised, and constituted, "[e]rror[s] in law" that were properly brought to the court's attention via defendants' motion to vacate the trial court's decision and to grant a new trial / judgment hearing. (*Siry*, *supra*, 45 Cal.App.5th at pp. 1131–1132.)[6] We agree, and now proceed to address the substance of the key alleged legal errors.

---

[6]      The Court of Appeal concluded that the trial court's "recalculation of treble damages reduced what was effectively quadrupled damages down to treble damages; the court's reduction of the punitive damages award was grounded in . . . constitutional law defining when such damages become so excessive as a matter of law as to deny a defendant due process; and the court's ruling that [plaintiff] must elect between treble and punitive damages involved construction of the law. (Cf. *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 507 [only trial court may sit as a 'thirteenth juror' in evaluating the amount of damages].)" (*Siry*, *supra*, 45 Cal.App.5th at pp. 1131–1132.)

In a footnote appended to the above passage, the appellate court addressed what it viewed as a misstatement made by the trial court regarding the applicable subdivision of Code of Civil Procedure section 657. Namely, the Court of Appeal observed that the trial court cited that section's subdivision 5 as the *ground* for its decision to reassess damages, whereas the appellate court concluded that the trial court's *reasoning* showed that it meant to invoke section 657, subdivision 7. (*Siry*, *supra*, 45 Cal.App.5th at p. 1132, fn. 11.)

Like the Court of Appeal below (see *Siry*, *supra*, 45 Cal.App.5th at p. 1129, fn. 10), we decline to address the

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

### B. Propriety of the Default Judgment's Treble Damages and Attorney's Fees Awards

Section 496, subdivision (a) (section 496(a)) defines the criminal offense of what is commonly referred to as receiving stolen property.  As amended in 1972 (Stats. 1972, ch. 963, § 1, p. 1739), it provides in relevant part:  "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," is subject to incarceration.[7]

Section 496(c), similar to some provisions in other statutory schemes,[8] articulates a right to special civil remedies

---

damages calculation issues that plaintiff has raised in its briefs, or whether it is appropriate to reinstate the original judgment. In this regard we note that the damages issues presented by plaintiff substantially intersect with those that we may address in *Los Angeles Unified School Dist. v. Superior Court* (2021) 64 Cal.App.5th 549, review granted September 1, 2021, S269608.

[7]    The subdivision continues, in two final sentences added in 1992:  "A principal in the actual theft of the property may be convicted pursuant to this section.  However, no person may be convicted both pursuant to this section and of the theft of the same property."  (§ 496(a), as amended by Stats. 1992, ch. 1146, § 1, p. 5374 [the 1992 amendment also redesignated former subds. 1–5 to be subds. (a)–(e)].)  The statute's subdivision (b) addresses a variation of the offense applicable to swap meet vendors and is not relevant in this litigation.

[8]    As the Court of Appeal below observed (*Siry*, *supra*, 45 Cal.App.5th at p. 1137), three prominent statutes provide for both treble damages and attorney's fees upon a showing of a predicate violation.   (Bus. & Prof. Code, § 16750, subd. (a) [Cartwright Act (state antitrust laws)]; Bus. & Prof. Code,

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

when a violation of section 496(a) has occurred.  Subdivision (c), as also amended in 1972, states that any person who has been injured by a violation of section 496(a) "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

As explained below, three prior Court of Appeal decisions have addressed section 496(c) and the issues implicated in the present proceeding.

### 1. Bell v. Feibush — *Finding Section 496(c) Applies in the Context of a Loan Scam*

In *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1043–1044 (*Bell*), the defendant induced the plaintiff to loan him more than $200,000 "based on the false pretense he owned [a specific trademark] and he needed the money to settle a lawsuit over his interests in" a related enterprise.  But these representations were lies, and the asserted enterprise "a scam."  (*Id*., at p. 1044.)

---

§ 17082 [Unfair Practices Act]; Civ. Code, § 52, subd. (a) [Unruh Civil Rights Act].)  Numerous other statutes do the same.  (E.g., Pen. Code, § 593d, subd. (f)(2) [governing tampering with cable video systems]; Welf. & Inst. Code, § 5330, subds. (a)(2) & (d) [willful release of confidential information or records].)  Still other statutes, as the appellate court also noted, provide for treble damages, without mentioning attorney's fees.  (E.g., Civ. Code, § 1719, subd. (a)(2) [passing checks with insufficient funds]; *id*., § 3345 ["actions brought by, on behalf of, or for the benefit of senior citizens or disabled persons . . . to redress unfair or deceptive acts or practices or unfair methods of competition"]; Gov. Code, § 12651, subd. (b) [False Claims Act]; Lab. Code, § 230.8, subd. (d) [actions concerning retaliation for engaging in "child-related activities" protected by statute].)

As observed *post*, footnote 10, and in part II.B.5, other jurisdictions also have enacted statutory provisions substantially similar to section 496(c), providing "civil theft" remedies of treble damages and attorney's fees.

When the plaintiff "asked for her money back, [the defendant] gave . . . a 'litany of excuses' and never repaid her." (*Ibid.*)

Following the defendant's abuse of discovery, the trial court entered a default judgment against him for breach of contract, fraud, and treble damages under section 496(c). On appeal the defendant challenged the treble damages award, observing that he had not been convicted in a criminal proceeding of violating section 496(a). The appellate court concluded, in a preliminary holding that is not challenged in the present case, that a criminal conviction is not a prerequisite to recovery of treble damages under section 496(c). (*Bell*, *supra*, 212 Cal.App.4th at pp. 1044–1047.) In the course of its discussion, the court in *Bell* stated that although it found "no ambiguity or uncertainty in section 496(c)," its construction was also "consistent with the statutory purpose expressed in the legislative history." (*Bell*, *supra*, 212 Cal.App.4th at p. 1046.) That history was aptly described in *Bell* as follows:

" 'Penal Code section 496 was amended in relevant part in 1972. Prior to the amendment, the statute did not apply to those who *sold* stolen property; it applied only to those who purchased, received, withheld or concealed it. Nor did it include the language currently found in subdivision (c), which permits any party injured by a violation of subdivision (a) to bring a civil action for damages. This language was added by Statutes 1972, chapter 963, section 1, pages 1739–1740. It was the result of Senate Bill No. 1068 (1972 Reg. Sess.). The bill was introduced at the request of the California Trucking Association, with the goal of eliminating markets for stolen property, in order to substantially reduce the incentive to hijack cargo from common carriers. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1068 (1972 Reg. Sess.) as amended June 26, 1972.) Yet while an early

version of the bill limited the plaintiffs who may bring civil actions to *public carriers* injured by the knowing purchase, receipt, concealment, or withholding of stolen property (Sen. Bill No. 1068 (1972 Reg. Sess.) as amended in Senate, May 30, 1972), the bill was subsequently amended to expand the class of potential plaintiffs to include "[a]ny person who has been injured by" the knowing purchase, receipt, concealment or withholding of stolen property.   (Sen. Amend. to Sen. Bill No. 1068 (1972 Reg. Sess.) June 26, 1972.)  Moreover, that same amendment included the *sale* of knowingly stolen property within its prohibitions, and allowed any person injured by the sale of knowingly stolen property to bring a civil action.  In other words, it is apparent that the statute, as enacted, broadly allows *anyone* injured by the sale of knowingly stolen property to bring a civil action against the seller, in order to reduce thefts by eliminating the market for stolen goods.' "   (*Bell*, *supra*, 212 Cal.App.4th at p. 1047, quoting *Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, 17–18, disapproved on another ground in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337, fns. omitted in *Bell*.)

In connection with the 1972 amendment of section 496(c), there was a national effort, led by Alan Bible, a United States Senator from Nevada, to address the "$16 billion cost that American businesses pay yearly for property crime thievery" and encourage other states to follow "California['s] . . . approach" by adopting "treble-damage civil remed[ies]."[9]

---

[9]     *Senator Bible Urges Governors to Push for State Laws to Control Fencing: Asks Support for Justice Department Local-State-Federal Law Enforcement Effort*, Transport Topics (Dec. 25, 1972), reprinted in Senate Report No. 93-276, 1st Session, pages 44–45, (1973); see Kossen, *Sen. Bible Moves in on*

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

Various states did so, employing, as in section 496(c), similarly broad language, affording treble damages and attorney's fees to "the owner" or "any person" upon a showing of criminal conduct constituting theft.[10]

---

*Big Peddlers of Stolen Goods*, San Francisco Examiner (May 13, 1973) page 28 (noting recent "parallel" legislation in California). See generally An Analysis of Criminal Redistribution Systems and Their Economic Impact on Small Business, Senate Select Committee on Small Business, Staff Report No. 85-141, 92d Congress, Second Session (1972) , pages 13–18 (identifying and analyzing state statutes concerning stolen property and fencing); Blakey & Goldsmith, *Criminal Redistribution of Stolen Property: The Need for Law Reform* (1976) 74 Mich. L.Rev. 1511, 1604 & fn. 482 (noting that "[t]he concept of treble damages," which originated in Roman criminal law, is employed in federal antitrust statutes — and proposing model legislation to be enacted in each state, imposing such civil liability upon proof of the elements of a criminal violation).

[10]   These statutes are, of course, not identical to ours — yet they are, for present purposes, substantially similar.   For example, Colorado Revised Statutes section 18-4-405, as amended in 1973 (Colo. Sess. Laws, ch. 154, § 1, p. 536), provides, regarding "[a]ll property obtained by theft," that "the owner may recover . . . three times the amount of the actual damages . . . and reasonable attorney fees."   See also, e.g., Connecticut General Statutes section 52-564 ("Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages")]; Florida Statutes section 772.11(1) ("Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of [criminal statutes, including theft, and dealing in stolen property] has a cause of action for threefold the actual damages sustained and . . . reasonable attorney's fees and court costs in the trial and appellate courts"); Michigan Compiled Laws section 600.2919a (allowing "a person damaged" to recover treble damages and attorney's fees for theft-related offenses concerning property); Ohio Revised Code section 2307.61(A)(1)(b)(ii) & (A)(2) (allowing

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

Regarding California's statute, the court in *Bell* summarized: "This history shows the Legislature believed the deterrent effect of criminal sanctions was not enough to reduce thefts.  The means to reduce thefts, the Legislature concluded, was to dry up the market for stolen goods by permitting treble damage recovery by 'any person' injured by the knowing purchase, receipt, concealment, or withholding of property stolen or obtained by theft.  Requiring a criminal conviction under section 496(a) . . . before an injured person could recover treble damages would not advance the stated goal because civil recovery would be limited to those instances in which law enforcement authority decided to initiate and complete prosecutions." (*Bell*, *supra*, 212 Cal.App.4th at p. 1047.)

The appellate court in *Bell* next addressed whether section 496(a)'s broad phrase, "any manner constituting theft," includes theft of funds by false pretense.  In holding that it does, the court examined the defendant's policy argument that "awarding [the plaintiff] treble damages under section 496(c) would 'open[] the door to any collecting creditor to claim that a breach of contract action constitutes a fraud, and in turn constitutes a theft, under [section 496(a)].' " (*Bell*, *supra*, 212 Cal.App.4th at p. 1047.) The court responded:  "Section 496(a) extends to property 'that has

---

"a property owner" to recover treble damages and attorney's fees upon proof of a criminal act of theft); South Carolina Code section 16-13-181 (allowing "[a]ny person" who has been injured or suffered damages because of a violation of the statutory crime of receiving or possessing stolen goods or other property to be awarded treble damages and attorney's fees); Utah Code section 76-6-412(2) ("Any individual who violates [the statute criminalizing receiving stolen property] is civilly liable for three times the amount of actual damages, if any sustained by the plaintiff, and for costs of suit and reasonable attorney fees").

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

been obtained in any manner constituting theft.'  Penal Code section 484 describes acts constituting theft.  The first sentence of section 484, subdivision (a) states:  '*Every person* who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or *who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property,* or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, *is guilty of theft*.'  (Italics added.)  Section 484 thus defines theft to include theft by false pretense.  (*People v. Gomez* (2008) 43 Cal.4th 249, 255, fn. 4.)"  (*Bell*, *supra*, 212 Cal.App.4th at p. 1048.)[11]

---

[11]    The court added:  "Penal Code section 532 also defines criminal fraud 'in terms nearly identical to [section] 484[,subdivision] (a)' and 'provides that these acts are punishable "in the same manner and to the same extent" as larceny.' (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 48, p. 76.)" (*Bell*, *supra*, 212 Cal.App.4th at p. 1048.)

Relatedly, we have observed that "embezzlement," which is defined as "the fraudulent appropriation of property by a person to whom it is intrusted" (§ 503), "is a recognized form of theft within the meaning of section 496." (*People v. Kunkin* (1973) 9 Cal.3d 245, 250, fn. 7; see also, *id.*, at p. 250 [§ 496's "broad language," targeting property " 'obtained in any manner constituting theft,' " is "intended to include property which has been obtained not only by theft by larceny (i.e., stealing) but also by such other forms of theft as embezzlement"].) Moreover, as we have explained, the term "theft" in section 496 includes forms of theft listed "in the general theft statute (Pen. Code, § 484),

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

The court in *Bell* continued, observing that "[i]n 1927, the Legislature consolidated the separate common law crimes of larceny, embezzlement, and theft by false pretense in Penal Code section 484, subdivision (a). [Citation.] The forerunner of Penal Code section 496, Penal Code former section 496bb, was added by statute in 1935, after this consolidation. . . . *Thus, when the Legislature enacted section 496(c), it presumably understood that the phrase 'a violation of subdivision (a)' would include theft by false pretense.*" (*Bell*, *supra*, 212 Cal.App.4th at p. 1048, italics added, fn. omitted.)  The court in *Bell* concluded that on the facts presented, "[t]he evidence established that [the defendant] violated section 496(a) not only by receiving property from [the plaintiff] by false pretense, but also by withholding that property when she asked for it back." (*Id.*, at p. 1049.)[12]

---

i.e., theft committed by means of larceny, embezzlement, or false pretenses." (*People v. Allen* (1999) 21 Cal.4th 846, 863 (*Allen*); see also *People v. Vidana* (2016) 1 Cal.5th 632, 648 [embezzlement is proscribed in both § 503 and in § 484, subd. (a)].)  Section 496(a) expressly targets property "*obtained in any manner constituting theft*" (italics added) — and there is no reason to conclude that this broad phrase should be viewed as excluding theft by embezzlement.  Consistently with this view, we observe, the federal district court decisions in *Allure Labs., Inc. v. Markushevska* (Bankr. N.D.Cal. 2019) 606 B.R. 51, 55 (*Allure*), and *Otte v. Naviscent* (Bankr. N.D.Cal. 2021) 624 B.R. 883, 910–913 (*Otte*), both applied the statute in the context of underlying embezzlement.  Finally, we observe that whereas section 514 articulates the criminal punishment for embezzlement, section 496(c) provides the civil remedies for the same.

[12]    In other words, the court in *Bell* observed, the defendant in that case violated section 496(a) in alternative ways.  Unpublished federal decisions have interpreted this aspect of *Bell* as requiring a showing of "additional conduct" — for example, conduct such as taking steps to conceal or withhold

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

Finally — and again, relevant to the issues in the current litigation — the Court of Appeal in *Bell* addressed the defendant's contention that permitting recovery of treble damages under section 496(c) would be "contrary to public policy and permit[] litigants to circumvent limitations on remedies." (*Bell*, *supra*, 212 Cal.App.4th at p. 1049.) The court rejected the argument, responding: "Our decision to affirm the default judgment is based on straightforward statutory interpretation. Section 496(a) extends liability to '[e]very person who buys or receives any property that has been stolen or that has been obtained *in any manner* constituting theft.' (Italics added.) Penal Code section 484, subdivision (a) describes the acts constituting theft to include theft by false pretense, which is the

embezzled funds. (*Grouse River Outfitters Ltd. v. NetSuite, Inc.* (N.D.Cal., Sept. 12, 2016, No. 16-cv-02954-LB) 2016 WL 5930273, pp. *13–*15 (*Grouse River*) [theft by false pretense]; *Agape Family Worship Ctr., Inc. v. Gridiron* (C.D.Cal., May 30, 2018, No. 5:15-cv-1465-ODW-SP) 2018 WL 2540274, pp. *4–*5 [breach of fiduciary duty, fraud, and conversion].) At oral argument both parties appeared to agree with the view expressed in these cases. We need not, and do not, decide whether this reading of the statute is correct. We observe, however, that subsequent federal decisions have criticized, and refused to follow, *Grouse River* and *Agape*. (See *Allure*, *supra*, 606 B.R. 51, 63 [observing that *Grouse River* and *Agape* misconstrued the decision in *Bell* by reading the statute to impose "as a prerequisite to recovery," a novel " 'additional conduct' requirement" not found in the statutory language]; accord, *Otte*, *supra*, 624 B.R. 883, 910 [implicitly agreeing with *Allure* that § 496 imposes no such requirement].) Ultimately the United States Court of Appeals for the Ninth Circuit, on review of the district court's decision in *Grouse River*, held the district court erred by dismissing the plaintiff's section 496(c) claim, and by requiring a showing of " 'additional conduct' " related to that claim. (*Grouse River Outfitters, Ltd. v. Oracle Corp.* (9th Cir. 2021) 848 Fed. Appx. 238, 243, fn. 4.)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

consensual but fraudulent acquisition of property from its owner. [Citation.] [The defendant] was found liable for fraud, i.e., for the fraudulent acquisition of property (money) from its owner ([the plaintiff]). 'Anything that could be the subject of a theft can also be property under section 496.' ") (*Bell*, *supra*, 212 Cal.App.4th at p. 1049.)

The appellate court acknowledged the defendant's "concerns about the potential consequences of our interpretation of section 496(c)" but stressed: "[I]t is the task of the Legislature to address those policy concerns." (*Bell*, *supra*, 212 Cal.App.4th at p. 1049.)

   2.   Lacagnina v. Comprehend Systems, Inc. —
        *Finding Section 496(c) Inapplicable Concerning*
        *Claimed Theft of Labor in an Employment*
        *Compensation Dispute*

The next Court of Appeal decision concerning section 496(c), *Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955 (*Lacagnina*), arose in the employment context.   That case concerned a terminated employee who successfully sued his former employer for, among other things, breach of contract and breach of the covenant of good faith and fair dealing, seeking lost salary compensation, commissions, and other disputed compensation.   The employee also claimed treble damages and attorney's fees under section 496(c), asserting "theft" of his "labor." (*Lacagnina*, at p. 970.)   After a jury returned a verdict for the employee, the trial court granted a nonsuit concerning the statutory claim.   Upon the employee's appeal, the reviewing court affirmed, finding section 496(c) inapplicable on the facts presented.   The court reasoned that although section 496(a) defines personal property to include "money," it makes no reference to "labor," which "is not 'property'

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

as that term is used in the Penal Code" (*Lacagnina*, at p. 969);[13] and merely because "labor may be the object of a 'theft' does not transform it into 'stolen property.' " (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 969.)[14]

---

[13]     As the appellate court wrote:  " '[T]he Penal Code defines property to include "both real and personal property" and further defines personal property to include "*money*, goods, chattels, things in action, and evidences of debt." (§ 7, subds. (10), (12).)' (*People v. Gonzales* (2017) 2 Cal.5th 858. 871.)  The statutory definition makes no reference to labor or other services.  Nor is there any indication of any intent to use the term 'property' in section 496 more broadly than the definition of the same term already provided by the Penal Code. ' " '[W]hen the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language.' "   [Citation.]' " (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 969, italics added.)

[14]     In the latter respect the Court of Appeal rejected the employee's reliance on the general theft statute, section 484 (quoted *ante*, pt. II.B.1.) to support a broad construction of the term "property."  The appellate court reasoned that although that statute provides a broad definition of theft that includes taking " '*by any false or fraudulent representation* or pretense, . . . money, *labor* or real or personal property . . .' (§ 484, subd. (a), italics added)[,] [t]he italicized language appears in a clause codifying the common law crime of theft by false pretense, which includes defrauding another person of labor by false or fraudulent representation." (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 969.)  But, the court reasoned, the section "defines *theft*, not *property*" — and the fact "that labor may be the object of a 'theft' does not transform it into 'stolen property.' " (*Ibid.*) "Indeed," the court continued, "we find it significant that while section 484 refers to labor, section 496 does not.  The difference in language between the two statutes, which are found in the same statutory scheme, is further evidence that the Legislature did not intend 'property' as that term is used in section 496 to include 'labor'; otherwise, it would not have used different terms in the two statutes." (*Ibid.*)  The court concluded: "The

23

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

Addressing and distinguishing *Bell*, *supra*, 212 Cal.App.4th 1041, the *Lacagnina* court noted that the employee failed to "cite any reported case, nor have we been able to identify one, in which a court has deemed labor or services a form of 'property' that can be stolen, as distinct from personal property, whether tangible or intangible." (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 970.)

After finding section 496(c) inapplicable on the facts presented, the appellate court proceeded to address, in dictum, alternative bases for its holding. (*Lacagnina*, *supra*, 25 Cal.App.5th at pp. 970–971.)  First, citing an unpublished federal district court decision, it asserted that even assuming "labor" qualifies as property under the statute, the statute would require that any such labor have already been " 'stolen' *at the time* [the defendant] allegedly defrauded him out of the disputed commission." (*Id*., at p. 971, citing *Grouse River, supra*, 2016 WL 5930273, at p. *14.)  That assertion appears to be erroneous.[15]  Second, the court proceeded, in dictum within

--------

Legislature showed in section 484 that it knows how to refer to 'labor' as an object of 'theft' when it wishes to do so, but it did not use that term in section 496.  It follows that labor does not constitute 'stolen property' within the meaning of that statute." (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 970.)

The present case does not pose whether wage theft might give rise to a claim for treble damages under section 496(c). We express no view concerning whether *Lacagnina* correctly distinguished between the theft of labor or services and the theft of other intangible property.

[15]  As observed *ante*, footnote 7, the final sentences of section 496(a) provide:  "A principal in the actual theft of the property may be convicted pursuant to this section.  However, no person may be convicted both pursuant to this section and of the theft of the same property."  This language, which was added in 1992,

dictum, to address policy issues that had been alluded to five years earlier by the court in *Bell*, *supra*, 212 Cal.App.4th 1041. Presaging the view elaborated by the Court of Appeal decision now under review, the opinion in *Lacagnina* asserted that "significant adverse consequences would likely follow . . . [i]f every plaintiff in an employment or contract dispute could also seek treble damages and attorney's fees on the ground that the defendant received 'stolen property.' " (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 972.) The court expressed concern that

was designed to address difficulties of prosecution in the circumstance in which a thief steals property and then keeps it until after the statute of limitations has run. (See *Allen*, *supra*, 21 Cal.4th 846, 858, citing and quoting 4 Stats. 1992, ch. 1146, § 2, p. 5375.) In *Allen* we characterized the resulting statutory language as "authoriz[ing] a conviction for receiving stolen property *even though the defendant also stole the property*, provided he has not actually been convicted of the theft." (*Allen*, at p. 857.) So viewed, the statutory language is inconsistent with the assertion in *Lacagnina*'s dictum that section 496(a) contemplates that property must already have been stolen when it comes into the defendant's hands.

Neither, we observe, does more recent federal authority support *Lacagnina*'s dictum. Granted, when *Lacagnina* was filed, the cited federal district court's unpublished decision construed the statute as requiring a showing that when the property in question comes into the defendant's hands, it must already have the character of having been stolen. But, as alluded to earlier, on review of the district court's decision in *Grouse River*, the United States Court of Appeals for the Ninth Circuit appears to have disapproved such a reading of the statute. (*Grouse River Outfitters, Ltd. v. Oracle Corp.*, *supra*, 848 Fed. Appx. 238, 242–243.) Nor have other federal district courts, in well-reasoned decisions, mentioned any such asserted requirement in the course of applying section 496 and permitting treble damages and attorney's fees in analogous "theft of funds" circumstances. (See *Allure*, *supra*, 606 B.R. 51, 63–66; *Otte*, *supra*, 624 B.R. 883, 911–913.)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

"such claims would become the rule rather than the exception, parties would more frequently assert claims for 'theft' in run-of-the-mill commercial disputes, and cases would be harder to settle" — and the court articulated doubt that "the Legislature contemplated, much less intended, those consequences when it enacted section 496[(c)]." (*Ibid.*)

> ### 3. Switzer v. Wood — *Finding Section 496(c) Applies to Claims of Fraud and Breach of Contract in the Joint Venture / Limited Liability Corporation Context*

In *Switzer v. Wood* (2019) 35 Cal.App.5th 116 (*Switzer*), the third and most recent Court of Appeal decision prior to the one under review, the appellate court found section 496(c) applicable in the setting we face in the present litigation — an equity income sharing dispute between joint venture / limited liability business partners. As in the opinions rendered in *Bell* and *Lacagnina*, the *Switzer* court also acknowledged and addressed the policy implications of its statutory interpretation.

In *Switzer*, the parties were business partners who sold medical devices. The plaintiff sued his partner and a related entity alleging, among other things, breach of contract, fraud, and breach of fiduciary duty concerning distribution of equity income funds. The plaintiff also sought the civil remedies afforded by section 496(c), treble damages, and attorney's fees. A jury found by special verdict for the plaintiff and awarded money damages, but the trial court declined to award additional remedies under the statute. Consistent with the closing dictum in *Lacagnina*, *supra*, 25 Cal.App.5th at page 972, the trial court reasoned that even though the plaintiff appeared entitled to such remedies under the words of section 496(c), "the Legislature could not have intended to apply the treble damage

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

remedy to wrongful conduct committed in the context of a joint venture or preexisting business relationship where ordinary fraud and breach of contract remedies would be available." (*Switzer*, *supra*, 35 Cal.App.5th at pp. 119–120 [so characterizing the trial court's ruling]; see also *id*., at p. 124 [quoting the trial court].)

The Court of Appeal reversed. It observed, as had the *Bell* court, that the language of section 496(c) "is clear and unambiguous." (*Switzer*, *supra*, 35 Cal.App.5th at p. 126.) "All that is required for civil liability to attach under section 496(c), including entitlement to treble damages, is that a 'violation' of . . . section 496[(a)] is found to have occurred. [Citation.] A violation may be found to have occurred if the person engaged in the conduct described in the statute." (*Ibid*.) The *Switzer* court noted that although section 496(a) "covers a spectrum of impermissible activity relating to stolen property, the elements required to show a violation of [that section] are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." (*Switzer*, *supra*, at p. 126.)

The *Switzer* court also observed that "[a] violation of section 496(a) may, by its own terms, relate to property that has been 'stolen' or 'that has been obtained *in any manner constituting theft* . . . .'" (*Switzer*, *supra*, 35 Cal.App.5th at p. 126.) Like the opinion in *Bell*, *supra*, 212 Cal.App.4th at page 1048, the appellate court looked to the general theft statute, section 484, subdivision (a) (quoted *ante*, pt. II.B.1.) for the definition of what constitutes a theft. The *Switzer* court highlighted (1) *Bell*'s " 'straightforward [conclusion of] statutory interpretation' " that the "theft [of funds] by false pretenses"

27

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

proved in that case established a violation of section 496(a) and triggered treble damages under section 496(c) (*Switzer*, *supra*, 35 Cal.App.5th at p. 127), and (2) *Bell*'s admonition that " 'policy concerns' " about inappropriate circumvention of traditional limits on civil remedies constituted an issue that "would have to be addressed to the Legislature." (*Switzer*, *supra*, at p. 127.)

The appellate court in *Switzer* determined that the same result was appropriate on the facts and claims before it.  The court reasoned:  "[I]t is undisputed that the jury specifically and unequivocally found all the factual elements necessary to establish that [the defendants] had engaged in conduct constituting a violation of section 496(a)." (*Switzer*, *supra*, 35 Cal.App.5th at p. 127.)  Specifically, the court determined, the jury found "that (i) [the defendants] obtained by theft property [funds] belonging to [the plaintiff], and concealed or withheld such property and/or aided in concealing or withholding such property from [the plaintiff]; (ii) [the defendants] knew the property was obtained by theft at the time they received, withheld, concealed, or aided in concealing or withholding the property from [the plaintiff]; and (iii) [the defendants'] violation of section 496(a) caused [the plaintiff] to suffer actual damage, loss, or harm." (*Switzer*, at pp. 127–128.) The court concluded:  "These explicit findings of fact by the jury, which [were not] challenged on appeal, clearly establish violation(s) of section 496(a)." (*Id.*, at p. 128.)  Accordingly, "under the plain and literal terms of section 496(c), [the plaintiff] was entitled to an award of three times his actual damages . . . ." (*Ibid.*)

The court in *Switzer* next addressed the defendants' argument "that section 496(c) should not be applied in a literal manner because the Legislature could not have intended to

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

extend the statutory treble damage remedy into the context of an ordinary business dispute where traditional remedies for breach of contract, fraud and conversion were available." (*Switzer*, *supra*, 35 Cal.App.5th at p. 128.) The defendants asserted that "despite the clear and unambiguous wording of the statutory provision," a "narrower construction" — such as one confining treble damages "to theft crimes involving common carriers' cargo" — "should be adopted to avoid absurdity." (*Ibid.*) The Court of Appeal disagreed, explaining that pursuant to fundamental principles of statutory interpretation, under which a court " ' "look[s] to the intent of the Legislature as expressed by the actual words of the statute" [citation], "giving them a plain and commonsense meaning" ' " (*ibid.*), the statute's " ' "clear and unambiguous" ' " language left " ' "no need for construction," ' " and the court would " ' "not speculate that the Legislature meant something other than what it said" ' " or " ' "*rewrite a statute to posit an unexpressed intent*." ' " (*Ibid.*, italics added.)

The Court of Appeal acknowledged a narrow exception to these standard principles of statutory construction exists when it can be determined that honoring statutory language "would frustrate the manifest purpose of the legislation as a whole or otherwise lead to absurd results." (*Switzer*, *supra*, 35 Cal.App.5th at p. 129, citing *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) And yet, the court observed, this limited exception "requires much more than showing that troubling consequences may potentially result if the statute's plain meaning were followed or that a different approach would have been wiser or better. (*In re D.B.* [(2014)] 58 Cal.4th [941,] 948 . . . .) Rather, '[t]o justify departing from a literal reading of a clearly worded statute, the

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

results produced must be so unreasonable the Legislature could not have intended them.' (*In re D.B.*, *supra*, 58 Cal.4th at p. 948.) Moreover, our courts have wisely cautioned that the absurdity exception to the plain meaning rule 'should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. [Citation.] We do not sit as a "super-legislature." [Citation.]' " (*Switzer*, *supra*, 35 Cal.App.5th at p. 129.)

The appellate court concluded that its understanding of section 496(c)'s words was not "absurd at all, much less so absurd in its results that we would be permitted to disregard its literal wording." (*Switzer*, *supra*, 35 Cal.App.5th at p. 129.) "The wording of the statute makes no exception for cases involving preexisting business relationships, nor does it limit applicability to violations involving common carriers or truck cargo, and we are not at liberty to insert such omitted terms into the statute." (*Id.*, at pp. 129–130.)

The court in *Switzer* surmised that in light of the language chosen, the Legislature "apparently believed that *any* violation of section 496(a)," if proved, "would warrant the availability of treble damages." (*Switzer*, *supra*, 35 Cal.App.5th at p. 130.) The court explained: "The creation of an enhanced civil remedy for any person injured by the theft-related criminal offenses defined in the statute is certainly not absurd or unreasonable. Considering the nature of the offense described by the statute and the apparent goal of deterring such theft-related conduct, the provision as literally written of an enhanced civil remedy to 'any person' injured by that particular offense constituted a reasonable legislative policy decision. The fact that the treble damage remedy may come into play where (as here) the parties were in a preexisting business relationship in which the

30

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

remedies at law have traditionally been limited (e.g., for fraud, conversion, or breach of contract) — while arguably a valid policy argument — manifestly falls short of establishing the absurdity exception.  In the final analysis, we are unable to conclude that the results produced by a literal reading of the statute would be 'so unreasonable the Legislature could not have intended them.'  (*In re D.B.*, *supra*, 58 Cal.4th at p. 948 . . . .)  In other words, the potential results of following the unambiguous literal wording of section 496(c) are not so absurd or unreasonable that we would be justified to override its plain meaning." (*Switzer*, *supra*, 35 Cal.App.5th at p. 130.)

The Court of Appeal acknowledged the recurrent policy concerns that had first been voiced in *Bell*, and elaborated upon on in *Lacagnina*, regarding the potential consequences of its interpretation of section 496(c). (*Switzer*, *supra*, 35 Cal.App.5th at p. 130.)  Nevertheless, the appellate court concluded, "*it is the task of the Legislature to address those policy concerns.*' " (*Ibid.*, quoting *Bell*, *supra*, 121 Cal.App.4th at p. 1049, italics in original.)  The court added:  "Of course, as always "[t]he Legislature . . . remains free to amend [the statute] if the language it has enacted is now understood to create unintended consequences." (*Switzer*, *supra*, 35 Cal.App.5th at p. 130.)

The appellate court next confronted the defendants' assertion that the legislative history (partially set out in *Bell*, *supra*, 121 Cal.App.4th 1041, and described *ante*, pt. II.B.1.) supported a contrary understanding of the statute.  In rejecting that view, the court stressed the provision's amendment history and that it was designed, not solely to deter theft, but also to provide a new civil remedy to those who have been injured by a violation of the statute. (*Switzer*, *supra*, 35 Cal.App.5th at

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

p. 131.)[16]   In the former respect, the court emphasized, the original 1972 bill was written broadly to authorize " 'any person' " injured by a violation of the section to be awarded treble damages (and attorney's fees); it was later amended to limit those civil remedies to "for-hire carriers"; but that version was "short-lived" — within a few weeks the original broad version was restored, to read as it does now.  (*Switzer*, *supra*, 35 Cal.App.5th at p. 131.)

The court summarized:   "As the above outline of the legislative history makes clear, although [the 1972 bill] may have been briefly amended during the legislative committee process to have a narrower remedial focus (i.e., for-hire carriers), the Legislature ultimately restored the wording giving a treble damage remedy to 'any person' who was injured by a violation of section 496.   Therefore, because the Legislature clearly approved and endorsed the broader scope of the civil remedy as provided in current section 496(c), we conclude the legislative history does *not* support [the defendants'] contention that section 496(c) was intended to have a narrow focus that would apply only to common carriers or to situations involving theft in the cargo industry."   (*Switzer*, *supra*, 35 Cal.App.5th at p. 132.)

---

[16]   In this regard, the appellate court observed, although "deterrence of theft" was one goal of the legislation, "another purpose . . . was expressly stated in the analysis provided by the Senate Committee on the Judiciary":  " '[E]stablish[ing] a civil remedy for persons who have been injured by another's purchase, concealment, sale, or withholding of property where such person knows the property has been stolen.' "  (*Switzer*, *supra*, 35 Cal.App.5th at pp. 131–132, quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1068 (1972 Reg. Sess.) as amended June 26, 1972, p. 1.)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

Accordingly, the Court of Appeal concluded that the plaintiff was entitled under section 496(c) to an award of treble damages. (*Switzer*, *supra*, 35 Cal.App.5th at p. 132.)   In the unpublished part of its opinion, the appellate court reversed the trial court's denial of the motion for attorney's fees under that same statute, and directed the trial court to issue a new order awarding attorney's fees.

### 4. *The Appellate Decision Below*

In this matter, the Court of Appeal framed the issue as whether section 496(c) authorizes treble damages when, as here, "the underlying conduct did not involve trafficking in stolen property, but rather the improper diversion of a limited partnership's cash distributions through fraud, misrepresentation, and breach of fiduciary duty." (*Siry*, *supra*, 45 Cal.App.5th at p. 1133.)   The court characterized the three appellate decisions described above as reflecting different "approaches to the issue" of section 496(c)'s applicability. (*Siry*, *supra*, 45 Cal.App.5th at p. 1133.)   It then explained: "We chart yet a different path in ruling that treble damages are not available under [section 496(c)] in cases where the plaintiff merely alleges and proves conduct involving fraud, misrepresentation, conversion, or some other type of theft that does not involve '*stolen*' property." (*Siry*, *supra*, 45 Cal.App.5th at p. 1134, italics added.)   In other words, as the court later explicated, it determined that section 496(c) applies generally when there is evidence that "property" has been the subject of theft — but the statute does not apply in "theft-related tort cases" (*Siry*, *supra*, 45 Cal.5th at p. 1136) involving fraud, misrepresentation, or breach of fiduciary duty.

Before commencing its statutory construction analysis, the appellate court below presented a general overview of statutory interpretation, during which it quoted various truisms from past decisions of this court. It began: "The 'first task' of any court 'in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Siry, supra*, 45 Cal.App.5th at p. 1134, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 (*Dyna-Med*).) The appellate court acknowledged that a statute's language usually provides " ' "the most reliable indication of legislative intent." ' " (*Siry, supra*, 45 Cal.App.5th at p. 1134.) Yet, the appellate court noted, the " ' "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose.' " (*Id.*, at p. 1135, quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 (*Lungren*).)

Next, the appellate court noted, in our own decisions we have "refused to ' "presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied." ' " (*Siry, supra*, 45 Cal.App.5th at p. 1135, quoting *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1325 (*Brodie*), and citing *Van Horn v. Watson* (2008) 45 Cal.4th 322, 333 (*Van Horn*).) Moreover, as the Court of Appeal observed, we have remarked, " '[i]t is doubtful that the Legislature would . . . institute[] . . . significant change through silence.' " (*Siry, supra*, 45 Cal.App.5th at p. 1135, quoting *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 646–647 (*Stiglitz*), and citing *In re Christian S.* (1994) 7 Cal.4th 768, 782 (*Christian S.*).) Applying these principles, the appellate court reasoned that allowing section 496(c) "to

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

authorize an award of treble damages whenever a plaintiff proves (or, in the case of a default, sufficiently alleges) any type of theft — whether it be fraud, misrepresentation, conversion, or breach of fiduciary duty — by which the defendant obtains money or property would institute [such] a 'significant change' [through silence]." (*Siry*, *supra*, 45 Cal.App.5th at p. 1135.)

The Court of Appeal proceeded to elaborate on various grounds for its conclusion.  First, it reasoned, a literal and broad reading of the statute "would transmogrify the law of remedies" for the torts of fraud, misrepresentation, conversion, and breach of fiduciary duty.  (*Siry*, *supra*, 45 Cal.App.5th at p. 1135.)  The court noted that the traditional damages remedy for these torts has been limited to the amount of actual damages caused by the perpetrators.  (*Ibid.*)  Affording treble damages in such settings, the appellate court asserted, "would all but eclipse these traditional damages remedies."  (*Id.*, at p. 1136.)

Second, the Court of Appeal reasoned, construing section 496(c) to apply in theft-related tort cases would impliedly and effectively "repeal the punitive damages statutes."  (*Siry*, *supra*, 45 Cal.App.5th at p. 1136.)  The court observed that normally a plaintiff seeking greater than compensatory damages must meet strict standards applicable to punitive damages — i.e., prove, by clear and convincing evidence, the defendant " 'guilty of oppression, fraud, or malice.' "  (*Ibid.*, quoting Civ. Code, § 3294, subd. (a).)  Yet, the appellate court asserted, if section 496(c) applied to these torts, "a plaintiff could obtain treble damages merely by proving the tort itself by a preponderance of the evidence."  (*Siry*, *supra*, 45 Cal.App.5th at p. 1136.)

Third, the appellate court asserted, because section 496(c) authorizes attorney's fees in addition to treble damages,

recognizing its application in the present setting (as the court in *Switzer* did in closely analogous circumstances) would, in effect, authorize fee shifting "in nearly every tort case involving fraud, misrepresentation, or breach of fiduciary duty, thereby creating a gaping exception to the general rule against such fee shifting." (*Siry*, *supra*, 45 Cal.App.5th at p. 1136, fn. 12.)

Fourth, the appellate court turned to the same legislative history recounted earlier, analyzed by the *Bell* and *Switzer* courts — yet drew the opposite conclusion. The court focused on the history's recitation of "discussions about how best to achieve the 'goal of eliminating markets for stolen property, in order to substantially reduce the incentive to hijack cargo from common carriers.' " (*Siry*, *supra*, 45 Cal.App.5th at p. 1136.) It implicitly acknowledged that the 1972 bill initially was written broadly, subsequently was narrowed, and then ultimately reverted to the present broad phrasing. Still, the appellate court reasoned, the Legislature's "focus never strayed from drying up the market for stolen goods" (*id.*, at p. 1137), and thus, the court could not "infer any legislative intent" to effectuate the "significant change" that would result if the statute were construed to afford treble damages (*ibid.*). Indeed, the appellate court said, the "Legislature's silence" concerning such intent "is even more deafening when contrasted with other statutes that speak with a much clearer voice" when "creating the extraordinary remedy of treble damages." (*Ibid.*) In view of all this, the appellate court determined, it could not "presume that our Legislature intended to so significantly alter the universe of tort remedies without saying anything about its desire to do so." (*Ibid.*)

Ultimately, the Court of Appeal concluded that section 496(c)'s "language sweeps more broadly than its intent," and hence must be understood, despite its unambiguous words, to

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

*withhold* "the remedy of treble damages for torts not involving stolen property." (*Siry*, *supra*, 45 Cal.App.5th at p. 1137.) The appellate court acknowledged that this conclusion conflicts with the decisions in *Bell* and especially *Switzer*, but explained that, in its view, the present case presents a situation in which perceived "legislative intent" (to maintain traditional remedies for torts involving fraud, misrepresentation, or breach of fiduciary duty) "trump[s] [the] statute's plain language." (*Ibid.*) And so, the court explained, the "narrower intent" that it attributed to the Legislature "is controlling" and applies here. (*Ibid.*)

The court further determined that in light of its reading of section 496(c), not only are treble damages unavailable in this setting, but correspondingly, the statute provides no basis for the trial court's award of attorney's fees. (*Siry*, *supra*, 45 Cal.App.5th at p. 1138.)

### 5. *Our Understanding of Section 496(c) as Applied Here*

Viewing the issue independently as a matter of law, we endorse the analysis of *Bell* and *Switzer* — even though, at the same time, we acknowledge that some of the policy considerations highlighted in those cases, and elaborated upon by the appellate court below, give pause. Fundamentally, we agree with the conclusions of *Bell* and *Switzer* that section 496(c) is unambiguous, and that read together with sections 496(a) and 484, and in conformity with our standard approach to interpretation (e.g., *Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190), section 496(c) must be understood as yielding the understanding attributed to it in those decisions: A plaintiff may recover treble damages and attorney's fees under section

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

496(c) when property has been obtained in any manner constituting theft.

We also find that section 496(c) applies concerning the conduct at issue in the present case. The unambiguous relevant language covers fraudulent diversion of partnership funds. Defendants' conduct falls within the ambit of section 496(a): They "receive[d]" "property" (the diverted partnership funds) belonging to plaintiff, having "obtained" the diverted funds "in [a] manner constituting theft." (*Ibid*.) Defendants also conceal[ed]" or "withh[e]ld[]" those funds (and/or aided in concealing or withholding them) from plaintiff. (*Ibid*.) They did all of this "knowing" the diverted funds were "so . . . obtained." (*Ibid*.)

We pause to elaborate on these points, and, specifically, criminal intent under the statute. Because this litigation comes to us upon default judgment, defendants are deemed to have admitted all material allegations, including the allegation that defendants committed theft. Although we are not asked here to determine whether plaintiff would have been able to prove theft, we observe that not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft. To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond "mere proof of nonperformance or actual falsity." (*People v. Ashley* (1954) 42 Cal.2d 246, 264.) This requirement prevents " '[o]rdinary commercial defaults' " from being transformed into a theft. (*Id.,* at p. 265.) If misrepresentations or unfulfilled promises "are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than can an innocent breach of contract." (*Id*., at p. 264.) In this

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

case, the record appears consistent with a conclusion that defendants acted not innocently or inadvertently, but with careful planning and deliberation reflecting the requisite criminal intent.

Defendants' violation of section 496(a) caused plaintiff to suffer actual damage, loss, or harm. (See *Switzer*, *supra*, 35 Cal.App.5th at pp. 127–128.) In these circumstances, plaintiff qualifies under section 496(c) as "[a]ny person who has been injured by a violation of subdivision (a)" — and hence is entitled to "bring an action for three times the amount of actual damages, if any . . . and reasonable attorney's fees." Finally, as the court in *Switzer* also observed, this construction and application of the statute cannot be avoided under the so-called "absurdity exception."[17] (*Switzer*, *supra*, 35 Cal.App.5th at p. 129.)

---

[17] That doctrine, if apt here, would arguably permit a court to decline to honor section 496(c)'s words, and instead construe the provision as the Court of Appeal ultimately did — to *withhold*, rather than to *afford*, treble damages and attorney's fees in this setting. Yet, as the Court of Appeal below implicitly acknowledged, section 496(c) is not susceptible to such a narrowing construction on the basis of an absurdity exception analysis because, for the reasons well articulated by the court in *Switzer* (described *ante*, pt. II.B.3.), reading section 496(c)'s words to give them full effect would *not* "frustrate the manifest purpose of the legislation as a whole or otherwise lead to absurd results." (*Switzer*, *supra*, 35 Cal.App.5th at p. 129.) Indeed, as the court in *Switzer* concluded, in light of "the offense described by [section 496(a)] and the apparent goal of deterring such theft-related conduct, the provision" as written — affording an enhanced civil remedy to "any person" who is injured by a violation — may be said to "constitute[] a *reasonable* legislative policy decision." (*Switzer*, *supra*, 35 Cal.App.5th at p. 130, italics added.) In any event, it cannot be said that such an understanding of the statute as written would reflect an "*absurd*

39

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

As noted earlier, in reaching its contrary determination the appellate court quoted selected language from our decisions concerning statutory interpretation. (*Siry, supra*, 45 Cal.App.5th at pp. 1134–1135.) Yet, as we shall explain, these fundamental statutory construction truisms do not, in the present circumstances, support the Court of Appeal's ultimate conclusion.

To begin with, *Dyna-Med, supra*, 43 Cal.3d at page 1386, quoted by the Court of Appeal concerning the need to ascertain the intent of the Legislature so as to effectuate the purpose of the law, concerned *ambiguous* statutory language — and hence is distinguishable from the present litigation. Similarly, and most significantly, although the appellate court below cited *Lungren, supra*, 45 Cal.3d at page 725, in support of the proposition that a court may properly inquire whether a literal meaning of a statute comports with its purpose, close review of that decision reveals that, in fact, we simply evaluated constitutional language that was subject to two alternate constructions, and endorsed the interpretation that avoided problematic internal inconsistencies within the overall scheme. In neither of these cases did we do anything similar to what the appellate court below proposes we do here — construe otherwise clear and unambiguous standalone language so as to withhold, rather than afford, that which its full and natural words provide.

---

*or unreasonable"* legislative policy determination. (*Ibid.*, italics added.) The parties cite no decision, and we are aware of none, finding the absurdity exception applicable on facts such as those at issue here.

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

Likewise, although the appellate court below cited cases such as *Brodie*, *supra*, 40 Cal.4th at page 1325, in support of the proposition that courts should be very reluctant to infer legislative intent to overthrow long-standing principles of law (and thereby significantly alter traditional limits on remedies in the face of legislative silence on that issue, or absent clearly expressed legislative intent to do so), *Brodie* and related decisions are inapt in the current circumstances.  In *Brodie*, contrasted with the present case, we faced statutory language that reflected a latent ambiguity.  On one hand, the Legislature clearly intended to modify a discrete aspect of the workers' compensation law.  Yet the statute was silent regarding whether the Legislature intended also to effectuate a corresponding broader change that would overthrow long-established apportionment principles.  In that setting, and in the face of ambiguity concerning the intended scope of the change to the statute, we invoked the traditional rule, declining to presume legislative intent to bring about such a major change in the face of silence — and we concluded, after reviewing the relevant legislative history, that only the limited, and not any monumental, change was intended.  (*Brodie*, *supra*, 40 Cal.4th at pp. 1325–1332.)  By contrast, the words of section 496(c) present no ambiguity, and the statutory construction issue before us today poses no interpretive challenge analogous to that in *Brodie* or related cases such as *Stiglitz*, *supra*, 60 Cal.4th 624, 646–647, *Van Horn*, *supra*, 45 Cal.4th 322, 333, and *Christian S.*, *supra*, 7 Cal.4th 768, 782.

As observed earlier, the Court of Appeal characterized the present circumstances as reflecting legislative "silence" concerning the scope of treble damages and attorney's fees remedies created by section 496(c), and it asserted that, in

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Opinion of the Court by Cantil-Sakauye, C. J.

comparison, the Legislature has spoken with appreciably more clarity in the course of enacting seven other statutes in which it has afforded such remedies.  (*Siry*, *supra*, 45 Cal.App.5th at p. 1137.)  Ultimately it appears that the appellate court discerned authority to give the statute a narrow cast, divorced from its words — based largely on the assertion that the Legislature has not spoken with similar or requisite clarity here. And yet our review of the statutes does not reveal support for any such distinction.[18]

Although the appellate court below articulated policy concerns that affording remedies flowing from section 496(c)'s language would generally and expansively allow remedies beyond those traditionally afforded at law for fraud, conversion, or breach of contract, these policy issues have not been hidden from the Legislature's attention, nor are they new.  As observed *ante*, footnote 10, broadly applicable analogous "enhanced civil remedies" statutes akin to section 496(c), also allowing recovery

---

[18]    Addressing, as representative, the most prominent three of the other statutes, we observe:   Neither Business and Professions Code section 16750, subdivision (a) (providing treble damages and attorney's fees for violations of the Cartwright Act, articulating our state's antitrust laws), nor Business and Professions Code section 17082 (specifying treble damages and attorney's fees for violations of the Unfair Practices Act), nor Civil Code section 52, subdivision (a) (establishing treble damages and attorney's fees for the violation of the Unruh Civil Rights Act), contains any special legislative intent language, in the process of creating those remedies.   Nor do any of these statutes reference provisions to which such special remedies apply in order to clarify, limit, or narrow the scope of the causes of action as to which those remedies are available.   Likewise, none of the other statutes cited by the appellate court (see *ante*, fn. 8) appear to contain any such clarifying, limiting, or narrowing language.

of treble damages and attorney's fees upon a showing of criminal theft, have been enacted in other jurisdictions. Likewise, although some out-of-state decisions have, similarly to *Lacagnina*, *supra*, 25 Cal.App.5th 955, construed their own statutes as not applying in factual circumstances different from those in the present case,[19] courts of those jurisdictions also have found their statutes do apply in factual circumstances like those we face here — in which funds were obtained or withheld in a manner constituting theft. Indeed, courts of other states have so construed their statutes even in the face of policy-based admonitions against unduly expanding such remedies.

---

[19]     See, e.g., *In re Dorland* (Bankr. D.Colo. 2007) 374 B.R. 765, 780 (declining to award treble damages and attorney's fees under the Colorado statute (quoted *ante*, fn. 10) because the plaintiff failed to prove, by a preponderance of the evidence, all of the elements of theft — specifically, intent to deprive one permanently of the use or benefit of funds); *Merslich v. Schnellenberger* (Fl.Ct.App. 1991) 578 So.2d 725, 725 (trial court properly exercised discretion in declining to award treble damages under the Florida statute (described *ante*, fn. 10) when the plaintiff failed to prove the requisite mental state on a claim arising from the defendant's fraudulent transfer of funds); *Hoffenblum v. Hoffenblum* (Mich. App. 2014) 863 N.W.2d 352, 360 (trial court properly exercised discretion in declining to award children treble damages under Michigan statute (described *ante*, fn. 10) on conversion claim against father, arising from his unlawful withdrawal of money from their trust accounts, when father's conduct was undertaken on advice of his financial advisor); see generally Annotation, What is "Intent to Deprive" Sufficient to Establish Liability for Civil, or Statutory, Theft (2018) 35 A.L.R.7th 1 (focusing primarily on decisions applying the Connecticut statute (quoted *ante*, fn. 10), and revealing that Connecticut courts, as well as others applying similar "civil theft" statutes, have in numerous contexts found the "intent to deprive" element unsatisfied, and hence have refused to award treble damages).

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

Cases construing Colorado Revised Statutes, section 18-4-405 (quoted *ante*, fn. 10) in circumstances like those we face here are particularly illuminating.   An early decision expressed policy concerns about subjecting "every trustee, bailee, broker, or other fiduciary to treble damages and attorney fees," thus "supplant[ing] common law conversion claims" — and saw this as a result the state legislature "could not have contemplated or intended." (*Itin v. Bertrand T. Ungar, P.C.* (Colo.App. 1998) 978 P.2d 142, 145.)  But on review the Colorado Supreme Court, in *Itin v. Ungar* (Colo. 2000) 17 P.3d 129, disagreed.  It held that although the statute, like ours, had been triggered by trucking industry interests (*id.*, at p. 134, fn. 8), under the provision's broad wording, the plaintiff was properly awarded such remedies stemming from the illegal diversion of funds.  (*Id.*, at p. 135; accord, e.g., *Rhino Fund, LLLP v. Hutchins* (Colo.App. 2008) 215 P.3d 1186, 1194 [rejecting assertion that the "economic loss rule" " 'abrogate[s] a legislatively created scheme designed to extend a civil remedy to those harmed by alleged criminal activity' "]; see also *Tisch v. Tisch* (Colo.App. 2019) 439 P.3d 89, 103–105 [defendant's appropriation of company funds for personal use triggered treble damages for civil theft].)

Most recently, the Colorado Supreme Court held that its statute applies even in the context of an employee's breach of contract — there, by improperly taking confidential proprietary information from his employer.  (*Bermel v. BlueRadios, Inc.* (Colo. 2019) 440 P.3d 1150.)  The court observed that "[t]he availability of treble damages and attorney fees for civil theft reflects the legislature's displeasure with the proscribed conduct and its desire to deter it" (*id.*, at p. 1157), and stressed, "it is not this court's place to substitute the judiciary's policy judgments for those of the General Assembly" (*id.*, at p. 1158).  To the

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

contrary, the state supreme court said: "Because the legislature's intent to provide a statutory remedy to victims of theft is plain from the face of the statute, no contrary statutory provision is before us, and there has been no allegation that the statute is unconstitutional, we are without any basis in law to limit the remedy it provides" (*id.*, at p. 1159). The Colorado high court reached these determinations over dissenting objections that doing so violates the "economic loss rule" and "dramatically expands [the plaintiff's] contractual remedies and establishes a precedent that [may] inappropriately allow many future contract claims to be asserted as civil theft claims, in pursuit of otherwise unavailable treble damages and attorney fees awards." (*Id.*, at p. 1160 (dis. opn. of Gabriel, J.).)[20]

As noted *ante*, part II.B.1–3, the same policy issues addressed in Colorado over the course of more than two decades

---

[20]     Accord, see, e.g., *Discovery Leasing v. Murphy* (Conn.App. 1993) 635 A.2d 843, 847 (applying the Connecticut statute (quoted *ante*, fn. 10), and finding that plaintiff established a prima facie case of conversion of investment funds and statutory theft of funds); *In re Hamama* (Bankr. E.D.Mich. 1995) 182 B.R. 757, 758 (under the Michigan statute (described *ante*, fn. 10), debtor who improperly withdrew money from employee's bank account was liable for statutory treble damages); *New Properties v. Newpower* (Mich.App. 2009) 762 N.W.2d 178, 189–190 (also under the Michigan statute, corporate investors were entitled to treble damages from a real estate business defendant who embezzled and transferred funds for its own use); *Department of Agriculture v. Appletree Marketing, LLC* (Mich. 2010) 779 N.W.2d 237, 240–242 (also under the Michigan statute, finding treble damages appropriate regarding a defendant who wrongfully spent trust funds on his own debts and failed to remit funds). Accord, *Zinn v. Zinn* (Fla.Ct.App. 1989) 549 So.2d 1141, 1142 (implicitly applying the Florida statute (quoted *ante*, fn. 10), and affirming an award of treble damages based on "civil theft" concerning investment funds).

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

also have been highlighted in the published opinions in *Bell*, *Lacagnina*, and *Switzer*.  Our Legislature is the appropriate body to address whether section 496(c) should be altered in light of our appellate courts' repeated constructive focus on these and related policy issues.  As alluded to earlier, and especially in light of the underlying legislative and case law history, any question we might harbor about how to properly balance such policy issues "manifestly falls short of establishing the absurdity exception" (*Switzer*, *supra*, 35 Cal.App.5th at p. 130) and leaves us with no room to decline to honor the words, as written, of section 496(c).

Although defendants and the Court of Appeal below insist the Legislature was primarily concerned with the theft of cargo, as we have observed, "statutory prohibitions 'often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.' " (*Smith v. LoanMe*, *supra*, 11 Cal.5th at p. 199.)  Moreover, as noted *ante*, part II.B.1., during the amendment process for the 1972 bill the Legislature expressly removed narrowing language (that would have limited coverage to "for-hire carriers") and replaced it with the present broad language, "[a]ny person."  In analogous circumstances concerning this same scheme, we have observed, "[W]e cannot read [that limitation] back into the resulting statute." (*Allen*, *supra*, 21 Cal.4th at p. 863.)

For the reasons articulated above, we decline to agree with the Court of Appeal's statutory construction analysis or conclusion.  We will not " ' "speculate that the Legislature meant something other than what it said," ' " and " ' "rewrite [the] statute to posit an unexpressed intent." ' " (*Switzer*, *supra*, 35 Cal.App.5th at p. 128; compare *Kopp v. Fair Pol. Practices*

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

*Com.* (1995) 11 Cal.4th 607, 615 [describing the very limited circumstances in which a court has "authority to rewrite a statute in order to preserve its constitutionality"].)

Perhaps the Legislature will see fit to consider the statute anew in light of the elaborated criticisms set forth in the Court of Appeal opinion below, and amend section 496(c) in line with the short-lived narrowed version that the Legislature briefly considered in 1972 before again broadening its scope to read as it does now.  In this respect, the Court of Appeal's decision below may usefully assist and prompt the Legislature.

In the meantime, however, although " '[w]e are not unmindful of [the] policy concerns about the potential consequences of our interpretation,' " it is and remains " 'the task of the Legislature to address those policy concerns.' " (*Switzer*, *supra*, 35 Cal.App.5th at p. 130, italics omitted, quoting *Bell*, *supra*, 121 Cal.App.4th at p. 1049.)

## III. CONCLUSION AND DISPOSITION

The Court of Appeal's judgment is affirmed to the extent it recognized and confirmed defendants' standing to move for a new trial — more precisely, a new judgment hearing — on the ground that the trial court committed errors in law when awarding and calculating damages.  The same judgment is reversed to the extent the appellate court declined to read section 496(c)'s words in their full and natural manner, by construing that subdivision to withhold, rather than afford, treble damages and attorney's fees when, as here, property "has been obtained in any manner constituting theft."  (§ 496(a).)

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Opinion of the Court by Cantil-Sakauye, C. J.

We remand to the Court of Appeal for proceedings consistent with our opinion.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**GUERRERO, J.**

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

S262081

Concurring Opinion by Justice Groban

I concur with the majority opinion's holdings.  I write separately to address the Court of Appeal's concern that, if read too broadly, Penal Code section 496[1] could "transmogrify the law of remedies" in a wide range of tort or breach of contract cases alleging that the defendant improperly obtained, diverted, received, or withheld the plaintiff's money.  (*Siry Investment, L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1135; accord, *Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955, 972 (*Lacagnina*) [noting the possibility of "significant adverse consequences" if parties could assert claims for treble damages under § 496 "in run-of-the-mill commercial disputes"].)  I believe it important to note that the majority opinion's interpretation of section 496 will not allow for the recovery of treble damages in all, or even most, consumer or commercial disputes involving tort or breach of contract claims, for the reasons explained below.

This matter comes to us upon a default judgment in the plaintiff's favor.  Defendants were deemed to have admitted all material allegations in plaintiff's complaint and were not permitted to challenge whether plaintiff has adequately proved a violation of section 496, subdivision (a) on appeal. (See *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

1

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Groban, J., concurring

813, 823.)  Given this procedural posture, the majority opinion rightly does not analyze in depth the elements required to establish a violation of section 496, subdivision (a) — a violation of which is required to obtain treble damages under section 496, subdivision (c).

The majority opinion nevertheless recognizes important limitations on the scope of section 496.  At a minimum, a plaintiff must prove that a "theft" has occurred to establish a violation of section 496, subdivision (a).  (Maj. opn., *ante*, at p. 38; see *id.* at pp. 37–38 ["A plaintiff may recover treble damages and attorney's fees under section 496(c) when property has been obtained in any manner constituting theft" under section 496, subdivision (a)]; see also § 496, subd. (a) [prohibiting persons from "buy[ing] or receiv[ing] any property that has been stolen or that has been obtained in any manner constituting theft"].)  Section 484 defines "theft," in part, as "*feloniously* steal[ing]" or "*knowingly and designedly*, by any false or fraudulent representation or pretense, defraud[ing]" a person of money or property.  (Italics added.)  Thus, to establish a theft, a plaintiff must show an intent to steal.  (*People v. Ashley* (1954) 42 Cal.2d 246, 263–264 (*Ashley*).)  "The intent to steal or *animus furandi* is the intent, without a good faith claim of right, to permanently deprive the owner of possession."  (*People v. Davis* (1998) 19 Cal.4th 301, 305.)  A defendant's good faith but erroneous belief in the truth of his or her misrepresentation or that the defendant has a right or claim to the property taken " 'negates the felonious intent necessary for conviction of theft.' "  (*People v. Kaufman* (2017) 17 Cal.App.5th 370, 388, quoting *People v. Tufunga* (1999) 21 Cal.4th 935, 938; see also *People v. Marsh* (1962) 58 Cal.2d 732, 737 [trial court erred in refusing to admit

2

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Groban, J., concurring

reports from scientists and doctors to show the defendants' good faith belief in their false representations that their machines cured medical ailments].)

As the majority opinion rightly observes, a mere unfulfilled promise or misrepresentation of fact is insufficient to establish an intent to steal. (Maj. opn., *ante*, at p. 39.) "[T]he defendant's intent must be proved in both instances by something more than mere proof of nonperformance or actual falsity." (*Ashley*, *supra*, 42 Cal.2d at p. 264.) "This requirement prevents ' "[o]rdinary commercial defaults" ' from being transformed into a theft." (Maj. opn., *ante*, at p. 38 quoting *Ashley*, at p. 265.) "If misrepresentations or unfulfilled promises 'are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than can an innocent breach of contract.' " (Maj. opn., *ante*, at p. 39, quoting *Ashley*, at p. 264.) Moreover, the testimony of a single witness that the defendant obtained the money or property through a false promise or representation must be corroborated. (*Ashley*, at p. 259; see also § 532, subd. (b).)

In *Ashley*, we held that the evidence supported the jury's finding that the defendant had the requisite felonious intent to steal. (*Ashley*, *supra*, 42 Cal.2d at p. 267.) The defendant "deliberately set out to acquire the life savings" of multiple unsophisticated elderly victims by stating that the loaned money would be used for an ambitious theater project, when in fact the money was almost immediately used to cover the expenses of defendant's failing corporation. (*Ibid*.) The fact that the "money acquired was needed and used for the running expenses of the corporation within a short time of its receipt"

3

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Groban, J., concurring

indicated that the defendant never intended to acquire or build the promised theater. (*Ibid.*)  In contrast, the evidence in *People v. Hartley* (2016) 248 Cal.App.4th 620 did not support a finding that the defendant had the requisite felonious intent to steal, even though the defendant acknowledged that he made an implied promise to pay a fare upon entering a cab and did not do so.  (*Id.* at p. 628.)  As the court explained, the evidence did not show that the defendant entered the cab intending to renege on his promise to pay; instead, the defendant "decided not to pay because of his frustration with the driver and [his] suspicion that the driver was trying to inflate the fare."  (*Id.* at p. 629.)  Thus, "his failure to pay the driver was akin to a transaction-gone-bad or, in the words of *Ashley*, ' "[o]rdinary commercial default[]." ' "  (*Hartley*, at pp. 630–631.)

Consistent with these cases, several courts have recently concluded that a section 496 claim for treble damages in a civil action cannot be maintained where the defendant lacked the requisite felonious intent.  In *GEC US 1 LLC v. Frontier Renewables, LLC* (N.D.Cal., Sept. 7, 2016, No. 16-CV-1276 YGR) 2016 WL 4677585, for example, the complaint alleged that the defendants improperly asserted control and ownership over a joint venture.  (*Id.* at p. *1.)  But, since the complaint also alleged that the defendants believed themselves to be the proper owners of the joint venture, the court concluded that they lacked the requisite felonious intent to steal.  (*Id.* at p. *9.)  The court explained that "allowing this claim to proceed on these allegations would sanction the use of the penal code to redress ordinary business disputes over ownership interests — an untenable result."  (*Ibid.*)  The court in *Lacagnina* similarly explained that "an essential element of a section 496 violation is

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Groban, J., concurring

the defendant's *knowledge* that the property was stolen" and doubted that "a dispute over unpaid commissions and other compensation qualifies." (*Lacagnina*, *supra*, 25 Cal.App.5th at p. 971; accord, *Gillette v. Stater Bros. Markets, Inc.* (C.D.Cal., Sept. 23, 2019, No. EDCV19-1292JVS (KKx) 2019 WL 8017735, p. *9 [allegation that the defendants " '[k]ept [plaintiff's] pay for themselves' " was not sufficient to state a claim for theft since there was no indication that the defendants obtained the wages by false pretenses or knew them to be obtained by false pretenses].)

There may be other relevant limitations on establishing a theft in a civil case seeking treble damages under section 496. Some federal courts have concluded that "[a] cause of action for civil theft cannot lie where a plaintiff receives legitimate services based on mutual agreement to pay for those services." (*Alvarez v. Adtalem Education Group, Inc.* (N.D.Cal., Dec. 16, 2019, No. 19-cv-04079-JSW) 2019 WL 13065378, p. *5 [no section 496 claim where students received an education in exchange for their tuition payments, even though university misrepresented postgraduate employment rates].) Several out-of-state decisions have declined to award treble damages under their similar theft statutes because the defendant lacked an intent to permanently deprive the plaintiff of the use or benefit of the money or property at issue. (Maj. opn., *ante*, at p. 43, fn. 19.) Further, as noted in the majority, two federal decisions have held that a plaintiff must show additional conduct beyond the underlying theft to obtain treble damages under section 496 — though these decisions have been criticized on appeal and not followed by other federal courts. (Maj. opn., *ante*, at pp. 20–21, fn. 12; cf. *People v. Allen* (1999) 21 Cal.4th 846, 857 [noting

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR
Groban, J., concurring

that the first sentence of a 1992 amendment to § 496 "authorizes a conviction for receiving stolen property *even though the defendant also stole the property*," which suggests that theft alone may enable § 496 liability in the civil context]; *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1049 [raising the issue of whether the second sentence of the 1992 amendment, which bars dual convictions of the theft itself and the receipt of stolen property, operates to bar "'double recovery'" in the civil context].)

Again, we are not called upon in this matter to determine the precise elements necessary to establish a theft in a civil case seeking treble damages under section 496, or even whether plaintiff would have been able to prove these elements had he not obtained a default judgment. I nevertheless do not believe the majority opinion's holding will create a sea change in the law. If, as a result of the majority opinion's holding, most consumer or commercial transactions could now be transformed into a "theft" case seeking treble damages — including, for example, every conceivable type of claim premised upon wage and hour laws, false advertising laws such as the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) or Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), warranty laws such as the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), or real estate or mortgage lending disputes — I might find such a result to be contrary to legislative intent. But I do not believe it is likely that section 496 will apply in most cases concerning consumer or commercial transactions, and I do not read the majority's opinion to suggest otherwise. And, as the majority notes, if the Legislature finds the treble damage remedy to be problematic where it does apply,

6

SIRY INVESTMENT, L.P. v. FARKHONDEHPOUR

Groban, J., concurring

the Legislature may amend the statute accordingly.  (Maj. opn., *ante*, at pp. 1–2.)

**GROBAN, J.**

**I Concur:**

**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Siry Investment, L.P. v. Farkhondehpour

_____

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 45 Cal.App.5th 1098
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S262081
**Date Filed:** July 21, 2022

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Stephanie M. Bowick and Edward B. Moreton, Jr.

_____

**Counsel:**

Wilson, Elser, Moskowitz, Edelman & Dicker, Gregory D. Hagen and Robert Cooper for Plaintiff and Appellant.

Law Offices of Steven P. Scandura and Steven P. Scandura as Amicus Curiae on behalf of Plaintiff and Appellant.

Knickerbocker Law Firm, Richard L. Knickerbocker; and Mohammad Fakhreddine for Defendant and Appellant Saeed Farkhondehpour.

Fisher & Wolfe, David Fisher; Greines Martin Stein & Richland, Robert A. Olson and Edward L. Xanders for Defendant and Appellant Morad Neman.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert Cooper
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
555 South Flower Street, 29th Floor
Los Angeles, CA 90071
(213) 330-8950

Richard L. Knickerbocker
Knickerbocker Law Firm
2425 Olympic Boulevard, Suite 4000W
Santa Monica, CA 90404
(310) 260-9060

Mohammad Fakhreddine
Law Office of Mohammad Fakhreddine
1601 Pacific Coast Highway, Suite 290
Hermosa Beach, CA 90254
(310) 698-0804

# EXHIBIT B

1  GABRIEL M. RAMSEY (SBN 209218)
       gramsey@crowell.com
2  JOACHIM B. STEINBERG (SBN 298066)
       jsteinberg@crowell.com
3  CROWELL & MORING LLP
   3 Embarcadero Center, 26th Floor
4  San Francisco, CA 94111
   Telephone: 415.986.2800
5  Facsimile:  415.986.2827

6  Attorneys for Defendant
   ERIC BRAVICK

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

| 12  DFINITY USA RESEARCH, LLC, a limited liability company, | Case No. 5:22-cv-03732-NC |
|---|---|
| 13                   Plaintiff, | **DEFENDANT ERIC BRAVICK'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 14          v. | |
| 15  ERIC BRAVICK, an individual and DOES 1 through 100, inclusive, | Date:    August 10, 2022 |
| 16                   Defendant. | Time:    1:00 p.m. |
| 17 | Ctrm:    Courtroom 5 |
| 18 | Judge:   Hon. Nathanael Cousins |
| 19 | [Fed. R. Civ. P. 12(b)(6)] |
| 20 | Complaint filed:  May 11, 2022 |

21        TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

22        PLEASE TAKE NOTICE that Eric Bravick ("Defendant" or "Mr. Bravick") respectfully

23  moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order

24  dismissing two claims in the Complaint of Dfinity USA Research, LLC ("Plaintiff" or "Dfinity"),

25  filed May 11, 2022, on the basis that Plaintiff has failed to state a claim upon which relief can be

26  granted. The grounds for this Motion are that Plaintiff has not adequately pled a claim under

27  California Penal Code 496(c) and Unjust Enrichment/Constructive Trust is not a cause of action

28  under California law.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, accompanying declaration from Eric Bravick, all other pleadings, papers and records filed with the Court concerning this matter, and on such further evidence as may be presented at the time of the hearing.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Fed. R. Civ. P. 12(b)(6), Mr. Bravick hereby moves for dismissal of claims Three (Civil Remedies Under California Penal Code 496(c) and Five (Unjust Enrichment/Constructive Trust) of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff can state a claim against Mr. Bravick for civil penalties under California Penal Code 496(c) where Plaintiff does not allege any facts establishing that the property at issue was stolen when it came into Mr. Bravick's possession, that Mr. Bravick had actual knowledge or believed the property was stolen, or that the property was in fact stolen under the definition applicable to California Penal Code 496(c) California Penal Code 496(c).

2.      Whether Plaintiff can state a claim against Defendant for unjust enrichment/constructive trust when neither unjust enrichment nor constructive trust are recognized as standalone causes of action under California law.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................... 1

III.  ARGUMENT ......................................................................................................... 3

    A.    Rule 12(b)(6) ............................................................................................... 3

    B.    Plaintiff Has Not Stated a Claim Under California Penal Code 496(c) .................. 4

    C.    Unjust Enrichment/Constructive Trust is Not a Cause
        of Action Under California Law ................................................................... 8

IV.  CONCLUSION ................................................................................................... 10

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google LLC*,
No. 17-CV-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018) ................................... 7

*Alvarez v. Adtalem Educ. Grp., Inc.*,
No. 19-CV-04079-JSW, 2019 WL 13065378 (N.D. Cal. Dec. 16, 2019) ............................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 4

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........................................................................................... 8

*Atienza v. Wells Fargo Bank, N.A.*,
No. C 10-03457 RS, 2011 WL 839400 (N.D. Cal. Mar. 7, 2011) ........................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 4

*Bell v. Feibush*,
212 Cal. App. 4th 1041 (2013) ......................................................................................... 6

*City of San Diego v. Monsanto Co.*,
334 F. Supp. 3d 1072 (S.D. Cal. 2018) ............................................................................. 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ............................................................................................ 8

*Dfinity USA Research, LLC v. Bravick*,
Case No. 22-cv-398321 (Cal. Sup. Ct.) ............................................................................. 1

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ......................................................................................... 8

*Flynt v. Shimazu*,
No. 216CV02831JAMJDP, 2021 WL 134491 (E.D. Cal. Jan. 14, 2021) ............................. 7

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......................................................................................... 4

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
No. 16-CV-02954-LB, 2016 WL 5930273 (N.D. Cal. Oct. 12, 2016) ................................... 5

*Hall v. Marriott Int'l, Inc.*,
No. 19-CV-1715 JLS (AHG), 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ........................ 9

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iv-

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC

1

**TABLE OF AUTHORITIES**
(Continued …)

2

Page(s)

3

*Herring Networks, Inc. v. Maddow*,
4    8 F.4th 1148 (9th Cir. 2021)...................................................................................... 7

*Hueso v. Select Portfolio Servicing*,
5    527 F. Supp. 3d 1210, 1231 (S.D. Cal. 2021) ...................................................... 5, 6

6

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*,
7    No. CV1701875MWFMRWX, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)...................... 8

8

*Kozlowski v. Stroomberg*,
   No. 2:13-CV-00291-JAM, 2013 WL 5883672 (E.D. Cal. Aug. 21, 2013) ............................. 9
9

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
10    No. 12-cv-1424 CAB (BLM) 2013 WL 12072526, at *3 (S.D. Cal. June 26,
   2013) ....................................................................................................................... 7
11

12 *McBride v. Boughton*,
   123 Cal. App. 4th 379 ............................................................................................. 8, 9
13

*Mollett v. Netflix, Inc.*,
14    795 F.3d 1062 (9th Cir. 2015)................................................................................. 4

15 *Mosier v. Stonefield Josephson, Inc.*,
   815 F.3d 1161 (9th Cir. 2016)................................................................................. 9
16

17 *Nowak v. Xapo, Inc.*,
   No. 5:20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)...................... 5, 6
18

19 *People v. Stuart*,
   272 Cal. App. 2d 653 (1969)................................................................................... 5

20 *Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
21    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ................................................................. 6

22 *Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014).................................................................................. 8
23

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
24    806 F.2d 1393 (9th Cir. 1986)................................................................................. 4

25 *Siry Inv., L.P. v. Farkhondehpour*,
   45 Cal. App. 5th 1098 (2020).................................................................................. 6
26

27 *Souter v. Edgewell Pers. Care Co.*,
   542 F. Supp. 3d 1083 (S.D. Cal. 2021) .................................................................. 8

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Stanford Hosps. & Clinics v. Archstone Communities, LLC*,
  No. 5:11-CV-00620-JF, 2011 WL 1748432 (N.D. Cal. May 6, 2011) ................................... 2

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ............................................................................................................. 7

*Swanson v. ALZA Corp.*,
  No. C 12-4579 PJH, 2013 WL 968275 (N.D. Cal. Mar. 12, 2013) ......................................... 9

*U.S. v. Flores*,
  901 F.3d 1150 (9th Cir. 2018) .................................................................................................. 5

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................................... 2

**Statutes**

Cal. Civ. Code § 1712 .................................................................................................................... 3

Cal. Penal Code § 484(a) ............................................................................................................... 6

Cal. Penal Code § 484(a) ............................................................................................................... 6

Cal. Penal Code § 496 .................................................................................................................... 5

Cal. Penal Code § 496(a) ........................................................................................................... 4, 5

Cal. Penal Code § 496(b) ............................................................................................................... 4

Cal. Penal Code § 496(c) ........................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 2, 3, 8

Fed. R. Civ. P. 81(c)(2) ................................................................................................................. 3

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-vi-

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Dfinity USA Research, LLC ("Dfinity USA" or "Plaintiff") is the United States arm of a blockchain company. An offshoot of a Swiss-based foundation, Dfinity USA has attempted to create a decentralized network to run what it calls an "internet computer." It hired Eric Bravick ("Bravick" or "Defendant") to help set up the data centers at the core of its business. Although Mr. Bravick successfully carried out his duties and even earned a promotion while employed by Dfinity USA, until Dfinity USA suddenly, unexpectedly, and wrongfully terminated Mr. Bravick's employment without explanation or cause.

Dfinity USA has sued Mr. Bravick for the return of computer equipment. In doing so, Dfinity USA brings at least two claims that lack any merit. First, it alleges civil liability under the California Penal Code, despite clear law holding that the provision of the Penal Code cited does not apply to similar circumstances. Second, it raises a claim for "unjust enrichment," even though unjust enrichment is not a standalone cause of action under California law. Although Mr. Bravick believes that the remaining causes of action lack merit, he moves this Court to immediately dismiss, with prejudice, Dfinity USA's claims under the California Penal Code and for unjust enrichment, because Dfinity USA has not—and cannot—state a claim for relief under either theory.

### II.    BACKGROUND

The Dfinity Foundation ("Dfinity Foundation" or collectively with Dfinity USA, "Dfinity") is a Swiss nonprofit that seeks to create a blockchain-based "internet computer." Although organized as a nonprofit, the Dfinity Foundation and its subsidiaries have raised significant outside capital. The Dfinity project was built around an initial coin offering, which is, for a cryptocurrency company, the rough equivalent of taking a company public.

Dfinity's internet computer relies on decentralized servers. The network for the internet computer is a set of geographically dispersed data centers, each containing several network "nodes." Each node, in turn, has "subnets." Dfinity USA hired Mr. Bravick in April 2020 as Senior Director of Data Services. *Dfinity USA Research, LLC v. Bravick*, Case No. 22-cv-398321

CROWELL & MORING LLP
ATTORNEYS AT LAW

(Cal. Sup. Ct.), Complaint ("Complaint,")[1] ¶ 7. Although his employment agreement[2] did not specify his job responsibilities, Mr. Bravick's role was to help establish data centers around the world. Mr. Bravick began working for Dfinity USA in May 2020. Complaint ¶ 8. By August 2020, he was promoted to "interim Vice President of Engineering." *Id.* In June 2021,[3] Dfinity USA terminated Mr. Bravick. *See* Complaint ¶ 10.

Dfinity USA alleges that while Mr. Bravick was an employee, it sent unspecified computer equipment ("Equipment"), claimed to be worth about $197,833.00 when new, to Mr. Bravick. *Id.* ¶ 9. Dfinity USA's Complaint does not identify what the Equipment is, when it was sent to Mr. Bravick, or why it was sent to him, except a conclusory statement that the Equipment was sent to him "to allow him to perform his employment-related duties." *Id.* Dfinity USA's Complaint does allege that a vendor, Chris Tarpley, attempted to arrange to collect the Equipment. *Id.* ¶ 12. Mr. Tarpley emailed Mr. Bravick on October 4, 2021. *See* Declaration of Eric Bravick ("Bravick Decl.") ¶ 3, Ex. 1. Tarpley Email E. Bravick, Oct. 4, 2021. That email contained a list of the Equipment. *Id.*[4] It did not say that Dfinity considered the equipment stolen, accuse Mr. Bravick of any interference with the property, or allege that Mr. Bravick had profited from the Equipment. *See id.* Counsel for Dfinity sent another email to Mr. Bravick on November 2, 2021. *See* Complaint ¶ 13. That email, like Mr. Tarpley's, did not say that the Equipment was stolen, accuse Mr. Bravick of any interference with the property, or claim that Mr. Bravick had profited from the Equipment. *See* Bravick Decl. ¶ 4, Ex. 2. Newman Email E. Bravick, Nov. 2,

---

[1] The Complaint is attached to the Notice of Removal, Dkt. No. 1, as Exhibit 1.

[2] The Employment Agreement, Complaint Ex. A, its attached Invention and Non-Disclosure Agreement, Exhibit A to Complaint Ex. A, and Non-Solicitation Agreement, Exhibit B to Complaint Ex. A, each contain choice-of-law clauses applying California law. Although Mr. Bravick does not concede the applicability, validity, or enforceability of any of these agreements, for the purpose of this Motion, he assumes that California law applies.

[3] Although the Complaint alleges that Mr. Bravick was terminated in July 2021, the record will show that it was in June.

[4] Although a Rule 12(b)(6) motion is limited to the four corners of the complaint, documents can be "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Stanford Hosps. & Clinics v. Archstone Communities, LLC*, No. 5:11-CV-00620-JF, 2011 WL 1748432, at *2 (N.D. Cal. May 6, 2011) (same).

1  2021. Dfinity USA alleges that it filed a report with the Palo Alto Police, Complaint ¶ 14, but

2  does not allege that criminal charges were ever filed or even investigated. *Id.*

3      Dfinity USA filed suit in California state court on May 11, 2022, and served Mr. Bravick

4  in Michigan on May 25, 2022. Dkt. No. 1, Notice of Removal ¶¶ 1-2. Mr. Bravick removed to

5  this Court on June 24, 2022.[5] Dfinity USA has alleged five causes of action against Mr. Bravick:

6  breach of contract, conversion, civil penalties under California Penal Code 496(c), restoration of

7  property pursuant to Civil Code § 1712, and "unjust enrichment/constructive trust." Mr. Bravick

8  denies any liability and looks forward to vigorously contesting all of these claims,[6] but moves

9  now for dismissal without leave to amend on the claims for unjust enrichment and civil penalties

10  under California Penal Code 496(c).

## III.    ARGUMENT

12      Dfinity USA has failed to state a claim under California Penal Code 496(c) or for unjust

13  enrichment. Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed when it

14  does not state facts upon which relief can be granted. A court may dismiss a claim without leave

15  to amend where any amendment would be futile. Plaintiff has not stated a claim under California

16  Penal Code 496(c) because, among other reasons, the Equipment is not and cannot be alleged to

17  have been stolen when it came into Mr. Bravick's possession. Because Plaintiff explicitly alleges

18  that it voluntarily sent the Equipment to Mr. Bravick, no set of facts exist that could state a claim

19  under that statute. Thus, dismissal without leave to amend is appropriate. Plaintiff's claim for

20  "unjust enrichment/constructive trust" should also be dismissed without leave to amend because

21  neither "unjust enrichment" nor "constructive trust" is a standalone claim under California law.

### A.    Rule 12(b)(6)

23      Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails

24  to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule

25  12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is

---

[5] Following removal, the deadline to respond to a complaint is "21 days after receiving – through service or otherwise – a copy of the initial pleading . . ." or within "7 days after the notice of removal is filed," whichever is longest. Fed. R. Civ. Pro. 81(c)(2). This Motion is thus timely.

[6] Mr. Bravick reserves all rights and affirmative defenses as to the remaining claims.

1    plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

2    plausible only if the plaintiff pleads facts that "allows the court to draw the reasonable inference

3    that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4    (2009).

5          For a claim to proceed, there must be "more than a sheer possibility that a defendant has

6    acted unlawfully." *Id*. Courts do not "accept as true allegations that are merely conclusory,

7    unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536

8    F.3d 1049, 1055 (9th Cir. 2008), and a court is "'not bound to accept as true a legal conclusion

9    couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

10         A claim should be dismissed "where there is either a lack of a cognizable legal theory or

11   the absence of sufficient facts alleged under a cognizable legal claim." *Mollett v. Netflix, Inc.*, 795

12   F.3d 1062, 1065 (9th Cir. 2015) (internal quotation marks and citation omitted). Leave to amend

13   should be denied if the court determines that "allegation[s] of other facts consistent with the

14   challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*

15   *Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

16         **B.      Plaintiff Has Not Stated a Claim Under California Penal Code 496(c)**

17         Plaintiff has alleged that it voluntarily sent the Equipment to Mr. Bravick. Complaint ¶ 9.

18   It therefore cannot allege that the property was stolen when it came into Mr. Bravick's

19   possession, which dooms its claim under California Penal Code section 496(c). Nor has Plaintiff

20   alleged that Mr. Bravick was ever aware that the property was "stolen," another fatal defect with

21   its claim. This Court should dismiss this claim.

22         California Penal Code section 496(c) states that "[a]ny person who has been injured by a

23   violation of subdivision (a) or (b) may bring an action for three times the amount of actual

24   damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

25   Subdivision (a) criminalizes buying or receiving stolen property.[7] Cal. Penal Code § 496(a). To

26   state a claim for civil penalties under California Penal Code section 496(c), Dfinity must allege

27   _____

28         [7] Subdivision (b) criminalizes certain conduct by swap meet vendors and is inapplicable.
     *See* Cal. Penal Code § 496(b).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC

1    "'(1) that the property has been stolen; (2) that the accused received, concealed or withheld it

2    from its owner; and (3) that the accused knew the property was stolen.' *People v. Stuart*, 272 Cal.

3    App. 2d 653, 656 (1969). The third element, 'requires actual knowledge of or belief that the

4    property is stolen.' *U.S. v. Flores*, 901 F.3d 1150, 1161 (9th Cir. 2018) (citing *People v. Tessman*,

5    223 Cal. App. 4th 1293, 1302 (2014)); *Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL

6    6822888, at *2 (N.D. Cal. Nov. 20, 2020). Dfinity USA has not alleged that the property was

7    stolen when Mr. Bravick received it, that he was ever aware that the property was "stolen," or that

8    the property was even stolen with the definition applied to California Penal Code 496(c). As a

9    result, Dfinity's claim should be dismissed.

10    ~~*First*, Plaintiff has not alleged this property was stolen when it came into Mr. Bravick's~~

11    ~~possession. California Penal Code 496 addresses the receipt of stolen property. "Which is to say,~~

12    ~~when the property in question comes into the defendant's hands, *it must already have the*~~

13    ~~*character of having been stolen.*" *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-CV-~~

14    ~~02954-LB, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016). Plaintiff has actually alleged the~~

15    ~~opposite: that it sent Mr. Bravick the equipment willingly and for its own purposes. *See*~~

16    ~~Complaint ¶ 9. As a result, section 496(c) does not apply. *See Hueso v. Select Portfolio Servicing*,~~

17    ~~Inc., 527 F. Supp. 3d 1210, 1231 (S.D. Cal. 2021) ("the statute clearly requires that property~~

18    ~~received by a person or entity subject to the statute either 'has been stolen' or 'has been obtained~~

19    ~~in any manner constituting theft ....' Cal. Pen. Code § 496(a)."); *cf. Alvarez v. Adtalem Educ.*~~

20    ~~*Grp., Inc.*, No. 19-CV-04079-JSW, 2019 WL 13065378, at *5 (N.D. Cal. Dec. 16, 2019) ("A~~

21    ~~cause of action for civil theft cannot lie where a plaintiff receives legitimate services based on~~

22    ~~mutual agreement to pay for those services. *See AdTrader, Inc. v. Google LLC*, 17-cv-07082,~~

23    ~~2018 WL 3428525, at *9-10 (N.D. Cal. July 13, 2018).").~~

24    *Second*, Plaintiff has not even alleged that Mr. Bravick had any actual knowledge or belief

25    that the equipment was "stolen." The Complaint alleges that Mr. Bravick "did not respond" to

26    Dfinity's requests, *see, e.g.*, Complaint ¶¶ 12-13 and 15-16, but no allegations that Mr. Bravick

27    knew the equipment was stolen besides a conclusory allegation of knowledge. *See id.* ¶ 34. The

28    Complaint sidesteps alleging that Mr. Bravick was ever told directly that he possessed "stolen"

CROWELL
& MORING LLP
ATTORNEYS AT LAW

property. *See id.* ¶¶ 12-16. And process, such as the purported police reports, would only put Mr. Bravick on notice of the claim of theft, not that he had property that was actually stolen at the moment he came into possession of it. *See Nowak*, 2020 WL 6822888, at *3 (filing a complaint is insufficient to show actual knowledge of a theft).

~~*Third*, while Plaintiff also alleges conversion, that is not a sufficient basis for theft under section 496(c). "We chart yet a different path in ruling that treble damages are not available under Penal Code section 496, subdivision (c) in cases where the plaintiff merely alleges and proves conduct involving fraud, misrepresentation, conversion, or some other type of theft that does not involve 'stolen' property." *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1134 (2020), as modified on denial of reh'g (Mar. 23, 2020), *review granted*, 468 P.3d 701 (2020). As the court found in *Siry*, there is no reason to believe that the California state legislature intended to "transmogrify the law of remedies for those torts." *Id.* at 1135. Nor did the legislature intend to "effectively repeal the punitive damages statutes." *Id.* at 1136. But if treble damages were available merely on a showing of conversion, which could be proven by a preponderance of the evidence, then section 496(c) would displace punitive damages, which require a showing of "oppression, fraud, or malice." *Id.*~~

~~*Fourth*, Plaintiff has not alleged that the property was "stolen" under California Penal Code section 496(c); even before *Siry* clarified and narrowed the scope of section 496(c), the definition of "stolen" property in California would not apply. While "[n]either state nor federal courts agree on what conduct is captured by this element," *Hueso*, 527 F. Supp. 3d at 1229, the most expansive definition any court has appeared to apply is that it captures any act listed in California Penal Code section 484(a). *See, e.g., Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013). Under that definition, Dfinity would have to show that Mr. Bravick "fraudulently appropriate[d] the property." Cal. Penal Code 484(a). They have not done so. And even if Plaintiff had alleged a theory of fraudulent misappropriation, that claim would sound in fraud and would be subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which Plaintiff has not even come close to satisfying. *See, e.g., Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1022 (N.D. Cal. 2017).~~

*Fifth*, Dfinity's claim is barred by California's "presumption against extraterritorial application." *See, e.g.*, *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Dfinity USA can only claim that the property was unlawfully in his possession after Mr. Bravick was fired, when he lived in Michigan. *See* Complaint ¶ 8. The California Penal Code does not apply to conduct in Michigan. *See M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-CV-1424 CAB (BLM), 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013) ("This Court is not persuaded that the California Penal Code is intended to reach the acts of citizens of a foreign jurisdiction that occurred solely in that foreign jurisdiction."); *Flynt v. Shimazu*, No. 216CV02831JAMJDP, 2021 WL 134491, at *3 (E.D. Cal. Jan. 14, 2021) (refusing to apply regulations extraterritorially despite plaintiffs' argument that such an application was "mandated" by the California Penal Code); *see also Sullivan*, 51 Cal. 4th at 1207 n.9 ("Plaintiffs' claim also potentially implicates the due process clause of the United States Constitution (14th Amend.), which places additional limitations on the extraterritorial application of state law.") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818(1985)).

Finally, Plaintiff cannot amend the Complaint to state a claim under California Penal Code section 496(c). A court acts within its discretion when it dismisses a claim without leave to amend because any amendment would be futile. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1161 (9th Cir. 2021); *see also Atienza v. Wells Fargo Bank, N.A.*, No. C 10-03457 RS, 2011 WL 839400, at *1 (N.D. Cal. Mar. 7, 2011) ("[I]f amendment would be futile, then dismissal without leave to amend is within the court's discretion."). ~~Because Plaintiff cannot amend its Complaint to state that the Equipment, which Plaintiff also alleges it intentionally sent to Mr. Bravick as part of his employment, was stolen when it came into Mr. Bravick's possession,~~ any amendment would be futile, and thus this Court should dismiss this claim without leave to amend. *See, e.g.*, *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018) ("For these reasons, the Court concludes that even if Plaintiffs were to amend the complaint to cure the deficiencies in their fraud claim, the allegations would not establish that [defendant] received stolen property. Thus, Plaintiffs' § 496(c) claim would fail again.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC

### C. Unjust Enrichment/Constructive Trust is Not a Cause of Action Under California Law

Plaintiff's fifth cause of action is for "Unjust Enrichment/Constructive Trust." This claim should be dismissed because it is not a cause of action under California law. "Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies … It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387(2004) (internal citations and quotation marks omitted; alteration in original). "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) and *Jogani v. Superior Court*, 165 Cal. App. 4th 901(2008)).

A plaintiff only states a claim for "unjust enrichment" if a court can construe it as a claim for "quasi-contract … seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). While a court can construe a claim for unjust enrichment as a claim for quasi-contract, it need not do so. *See, e.g.*, *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV1701875MWFMRWX, 2017 WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017). And here, the facts alleged do not state a claim for quasi-contract.

"A quasi-contract claim typically involves a plaintiff seeking a return of a benefit that the defendant had unjustly gained through 'mistake, fraud, coercion, or request.'" *Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1099 (S.D. Cal. 2021) (quoting *Astiana*, 783 F.3d at 762). "The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *Durell v. Sharp*, 183 Cal. App. 4th at 1370. (internal citation and quotation marks omitted; emphasis in original). And where there is an express contract between the parties, "[a]n unjust enrichment theory is inapplicable." *Id.*

Here, Plaintiff's claims are based on an actual contract between the parties.[8] As a result,

---

[8] Defendant does not concede any of the facts in the Complaint, but under Rule 12(b)(6), well-pleaded allegations of material fact are accepted as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010).

CROWELL & MORING LLP
ATTORNEYS AT LAW

1   quasi-contract is unavailable as a cause of action. "'[A]s a matter of law, a quasi-contract action

2   for unjust enrichment does not lie where, as here, express binding agreements exist and define the

3   parties' rights.'" *Mosier v. Stonefield Josephson, Inc*., 815 F.3d 1161, 1172 (9th Cir. 2016)

4   (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc*., 94 Cal. App. 4th 151

5   (2001)); *Hall v. Marriott Int'l, Inc*., No. 19-CV-1715 JLS (AHG), 2020 WL 4727069, at *13

6   (S.D. Cal. Aug. 14, 2020) (accord).

7        Nor has Plaintiff even alleged all the elements of quasi-contract. To state a claim, Plaintiff

8   must show that Mr. Bravick has obtained a benefit from Plaintiff. *See City of San Diego v.

9   Monsanto Co*., 334 F. Supp. 3d 1072, 1085 (S.D. Cal. 2018). But aside from a barebones

10  assertion that he "misappropriated the use of the Equipment for his own financial gain,"

11  Complaint ¶ 50, Plaintiff has failed to allege what gain Mr. Bravick has taken, what benefit

12  Plaintiffs were entitled to that they have been deprived of, or why this harm is not entirely

13  subsumed in Plaintiff's claims for breach of contract and conversion. *See, e.g.*, *McBride v.

14  Boughton*, 123 Cal. App. 4th 379, 388 (2004) (when a defendant obtains a benefit "by fraud,

15  duress, conversion, or similar conduct the plaintiff may choose not to sue in tort, but instead to

16  seek restitution on a quasi-contract theory (an election referred to at common law as 'waiving the

17  tort and suing in assumpsit')") (internal citation omitted).

18       Plaintiffs also cannot rely on having styled their cause of action as "constructive trust"

19  along with "unjust enrichment," because like "unjust enrichment," "[u]nder California law, a

20  constructive trust is an equitable remedy, not a cause of action." *Swanson v. ALZA Corp.*, No. C

21  12-4579 PJH, 2013 WL 968275, at *13 (N.D. Cal. Mar. 12, 2013) (collecting cases); *see also

22  Kozlowski v. Stroomberg*, No. 2:13-CV-00291-JAM, 2013 WL 5883672, at *5 (E.D. Cal. Aug.

23  21, 2013) (dismissing a claim for "Unjust Enrichment and Constructive Trust" with prejudice

24  when the court of defendant's argument that "unjust enrichment is an equitable remedy and a

25  constructive trust is the vehicle through which the remedy proceeds, but they are not a standalone

26  cause of action…").

27       As with Plaintiff's claim under the California Penal Code, any amendment to its claim of

28  "unjust enrichment/constructive trust" would be futile, because no amendment would make either

CROWELL
& MORING LLP
ATTORNEYS AT LAW

claim a cause of action under California law. And it would only be appropriate for Plaintiff to be permitted to pursue its claim for unjust enrichment under a theory of quasi-contract if it simultaneously abandoned its claims for breach of contract and conversion. As a result, this Court should dismiss Plaintiff's claim for unjust enrichment/constructive trust without leave to amend.

## IV.  CONCLUSION

This Court should dismiss Plaintiff's claims for unjust enrichment and civil penalties under California Penal Code section 496(c) without leave to amend.

Dated:  July 1, 2022

Respectfully submitted,

CROWELL & MORING LLP


By: */s/ Joachim B. Steinberg*
Gabriel M. Ramsey
Joachim B. Steinberg

Attorneys for Defendant
ERIC BRAVICK

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS AND MPA IN SUPPORT;
CASE NO. 5:22-cv-03732-NC